UNION BANK OF BROOKLYN, Appellant, *v.* DAVID A. SULLIVAN et al., Respondents.

Promissory notes — consideration — note made by officers of bank to be carried in assets in place of worthless securities — renewal of such note — liability of maker and indorsers thereof.

1. A valuable consideration, sufficient to support a contract, may consist of some right, interest or benefit accruing to one party, or some forbearance, detriment, loss or responsibility given, suffered or undertaken by the other.

2. A bank carried among its assets a sum, represented by notes of no real value. In order to avoid charging such sum against the surplus of the bank, thereby causing a deficit therein and thus impairing the market value of the stock, the members of the executive committee and the president of the bank, all of them directors and stockholders thereof, entered into an agreement whereby a note for the amount of the worthless notes was made by the president and indorsed by each one of the executive committee and substituted in the place of the worthless notes and carried among the assets of the bank. Upon defendant's contention that this note was without consideration, the trial court dismissed the complaint. *Held*, error; that there was evidence upon which the jury might have found

that some benefit accrued to the defendants from the note in question and that there was a sufficient consideration therefor.

3. It appearing from the evidence that it was not intended by the parties to the note that the maker thereof should be primarily liable thereon as the principal debtor, but that all of them, makers and indorsers alike, should stand behind the note, "not separately but collectively," it was not necessary in order to charge the indorsers thereof that the note be presented for payment at any particular time or place. (Neg. Inst. Law [Cons. Laws, ch. 38], §§ 130, 140.)

4. Some time after the making of the note in suit, the maker and the indorsers thereof, with one exception, but without the authority or knowledge of the board of directors of the bank, substituted for it their individual notes for equal sums amounting in the aggregate to the total of the note for which they were substituted. *Held*, that the substitution of the individual notes for such note was unauthorized and, therefore, inoperative. (Neg. Inst. Law [Cons. Laws, ch. 38], § 204.)

5. When the note in suit was substituted for the original note one of the indorsers of that note was dead, and the new note was indorsed in his name by only one of the several executors of his will. *Held*, that such indorsement without the co-operation of the other executors did not bind his estate.

*Union Bank* v. *Sullivan*, 161 App. Div. 884, modified.

(Argued January 13, 1915; decided March 16, 1915.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered March 5, 1914, modifying by striking out the words "upon the merits" and affirming as modified a judgment in favor of defendants entered upon a a dismissal of the complaint by the court at a Trial Term.

The superintendent of banks has taken possession of the business and property of the plaintiff, a banking corporation, and has brought this action as provided by law, in the name of the bank, to recover upon a promissory note. The defendants were stockholders and directors of the bank.

It appears that in April, 1906, the Union Bank of Brooklyn (not the plaintiff, but the plaintiff's predecessor in interest of the same name) took over all the assets of

the Peoples Bank of Brooklyn, and in appraising the property of the Peoples Bank overvalued the same to the extent of $175,000. Instead of charging the amount to profit and loss, and taking it out of surplus, the bank carried the $175,000 in the form of a loan to the Orr Contracting Company, a corporation having no property whatever, and took from that company a note or notes for the amount. These notes were held by the bank among its assets for several months and were then replaced by a note of $175,000, which the note in suit subsequently took the place of.

The president of the bank gave the following explanation of what was done:

"This $175,000 was carried among the assets of the Union Bank of Brooklyn and was represented by notes of the Orr Contracting Company. * * * These notes did not represent any real value. * * * I brought the matter up at a meeting of the executive committee * * * consisting of Buttling, Tompkins, Strasser, Albers, Damron, Brown, Michaels, Bogart and myself. * * * I stated to the committee that we were carrying $175,000 in notes among the assets of the bank which should be charged off out of the surplus." Michaels and Brown said: "that it would not look well to charge it out of the surplus of the bank; that at the next public report of the bank it would show a large deficit in our surplus and cause not only criticism, but probably quite some of our stock would be offered for sale * * *. We discussed the advisability of placing a good note among the assets of the bank instead of these other notes which represented no value."

The witness referred to certain "suspended assets" owned by the bank or held for it, and speaking of the proposed note in connection with such assets said: "If they come in we could apply it on this note of $175,000 and two or three of the members said they would take their chance on that; that they were heavily interested in the

bank and would stand back of the note." He was then questioned and made answer as follows: "Q. I want to know exactly what was said about that. In case the profits realized on the (suspended assets) that you refer to were not sufficient to pay the note then what was said by anybody present? A. I recall three at least saying they would stand back of it and the others acquiescing in it and also stating that they would take a chance on the profits paying the note. * * * Q. Was there anything said by you, did you ask them or say anything to them about standing behind the note. * * * A. I asked them all to stand behind the note when it was made, not separately, but collectively, and they all agreed to do so. * * * Q. What did they all say when they agreed? A. They acquiesced by saying yes or bowed their heads or something. There was no objection or dissension in the matter at all."

Pursuant to this arrangement, a note for $175,000 was made by the president, Sullivan, and was indorsed by the other members of the executive committee, being the eight individuals mentioned, who in addition to being members of the executive committee, were all directors of the Union Bank, and were stockholders in the bank to a very considerable amount. They or their personal representatives are the defendants in this action.

It is not clear from the evidence in what account the Orr Contracting Company's notes had been carried by the bank — whether charged to bills discounted, or to demand loans, or placed in the suspense account. But, however carried, they appeared as assets in determining the bank's surplus, and when the note of the president, indorsed by the directors, was taken, the Orr Contracting Company's notes were destroyed and the new note was substituted therefor, and the bank's surplus remained the same.

Some time later on the Union Bank sold and assigned all its property and assets, including the $175,000 note,

to the Mechanics and Traders Bank. The indorsers of the note were all directors and stockholders in that bank and the maker, the defendant Sullivan, was its president. Prior to July 23, 1907, collections to the amount of $25,000 had been made on account of the suspended assets before mentioned, which were applied on the $175,000 note, and on that day a new note for $150,000 was made, which is the note sued on. This note was made by Sullivan and indorsed by the same persons who had indorsed the $175,000 note, except Tompkins, who had died, and the note was indorsed in his name by his executor, the defendant Sullivan.

The Mechanics and Traders Bank, after it took over the Union Bank, made reports to the state banking department as required by law, and published a statement of its financial situation, and in these reports and statement the $175,000 note at first, and afterwards the $150,000 note, were scheduled as assets and were regarded as assets in declaring dividends by the bank.

.On November 1, 1907, at a meeting of the executive committee of the Mechanics and Traders Bank, the individual notes of the maker and each of the indorsers, except the defendant Henry Albers, for $16,666.67 were substituted for the $150,000 note. Each of the indorsers except Albers at the same time canceled his indorsement upon the larger note. Albers' name thereon remained uncanceled and he gave no other note. It was proved on the trial that the board of directors of the bank did not authorize the cancellation of the $150,000 note and the substitution therefor of the individual notes of the persons liable.

The Mechanics and Traders Bank closed its doors in January, 1908, and resumed business in the month of August of that year under the name of the Union Bank of Brooklyn, as shown in the title of this action. On April 5, 1910, the bank again closed its doors and the superintendent of banks took possession of the institution

and placed a special deputy in charge thereof. Into the hands of this deputy came the note of $150,000, and on November 23, 1910, he caused the same to be presented for payment and to be protested for non-payment, and notice thereof to be given to the defendants. On the evidence, of which the foregoing is a summary, the court dismissed the complaint.

*Joseph G. Dean, Rufus O. Catlin, George A. Blauvelt, Joseph A. Warren* and *Louis Goldstein* for appellant. The original note of $175,000 was supported by a good and valuable consideration. (*Hamer* v. *Sidway*, 124 N. Y. 538; *Marston* v. *Swett*, 66 N. Y. 206; *Marie* v. *Garrison*, 83 N. Y. 14; *Columbia College* v. *Lynch*, 70 N. Y. 440; *McClure* v. *Wilson*, 70 App. Div. 149; *Childs* v. *White*, 158 App. Div. 1; *Brown* v. *Mechanics & Traders Bank*, 12 N. Y. Supp. 861; *Spencer* v. *Ballou*, 18 N. Y. 327.) The plaintiff after the making, indorsement and delivery of the note for $175,000 became the owner and holder thereof for value. (*Harger* v. *Worrall*, 69 N. Y. 370; *Mechanics & Traders Bank* v. *Crow*, 60 N. Y. 85; *Ross* v. *Bedell*, 5 Duer, 462; *Seybell* v. *Bank*, 54 N. Y. 288, 291; *Dykman* v. *Northridge*, 1 App. Div. 26; *Ware* v. *Dos Passos*, 162 N. Y. 281.) The parties hereto were all makers and are, therefore, primarily liable irrespective of the question of presentment and notice. (*Haddock, Blanchard & Co.* v. *Haddock*, 192 N. Y. 499.) The indorsement of the note in suit by the estate of E. B. Tompkins by David A. Sullivan, as executor thereof, was binding upon such estate. (*Chouteau* v. *Suydam*, 21 N. Y. 179; *Glenn* v. *Burrows*, 37 Hun, 602; 119 N. Y. 660; *Matter of Van Slooten* v. *Dodge*, 145 N. Y. 327; *O'Brien* v. *Jackson*, 167 N. Y. 31.)

*Hugo Hirsh, Max D. Steuer, Emanuel Newman* and *Benjamin Reass* for Joseph Michaels et al., respondents. The complaint should have been dismissed on the ground

that the plaintiff had failed to allege or show the presentment of the note within a reasonable time, and, therefore, under the provisions of section 131 of the Negotiable Instruments Law the indorsers had been relieved. (*Comcl. Nat. Bank* v. *Zimmerman,* 185 N. Y. 210.) Plaintiff did not take said note in good faith and for value; on the contrary, plaintiff, by its president and agent, had notice that the note was made for no value or consideration whatever and was fully aware of the infirmities in and attached to the instrument. (*Ward* v. *City Trust Co.,* 192 N. Y. 61.)

*John H. Corwin* for James M. Brown, respondent.

*Omri F. Hibbard, J. Bradley Tanner* and *Henry Albers, Jr.,* for Henry Albers, respondent. The original note of $175,000 was not supported by any consideration. (*Spencer* v. *Ballou,* 18 N. Y. 347.) The cancellation of the indorsements upon the note in suit discharged the defendant Albers. (*Col. D. Co.* v. *Rech,* 151 App. Div. 128; *Spies* v. *National City Bank,* 174 N. Y. 222; *Booth* v. *Powers,* 56 N. Y. 22; *Bank* v. *Madden,* 114 N. Y. 280; *Bank of Le Roy* v. *Purdy,* 100 App. Div. 64; *Fowler* v. *Walsh,* 119 App. Div. 542; *Rankin* v. *Bush,* 93 App. Div. 181; *M. L. M. Co.* v. *T. S. & Co.,* 139 N. Y. 146; *Sage* v. *Culver,* 147 N. Y. 247; *Bank of N. Y.* v. *A. D. & T. Co.,* 143 N. Y. 559.) It was necessary to present the note for payment and to give notice of demand and non-payment. (*Alexander* v. *Parsons,* 3 Lans. 333; *Eisenlord* v. *Dillenback,* 15 Hun, 23; *Sice* v. *Cunningham,* 1 Cow. 397; *Crim* v. *Starkweather,* 88 N. Y. 339; *Merritt* v. *Todd,* 23 N. Y. 28; *Comcl. Nat. Bank* v. *Zimmerman,* 185 N. Y. 210.)

*Joseph M. Hartfield* and *Earle W. Webb* for executors of Edward B. Tompkins, deceased, respondents. The act of David A. Sullivan in indorsing the note sued upon

created a cause of action against himself individually, and not against the estate of the decedent. (*Carideo* v. *Austin,* 88 App. Div. 36; *Reimors* v. *Schmitt,* 68 App. Div. 299; *Olin* v. *Arendt,* 27 Misc. Rep. 270; *Glenn* v. *Burrows,* 37 Hun, 602; *Schiebler* v. *Albee,* 114 App. Div. 146; *Hildreth* v. *Raffin,* 141 App. Div. 77; *Schmittler* v. *Simon,* 101 N. Y. 554.) The executor, David A. Sullivan, certainly could not bind the estate in this case when he signed the note, without the consent of the other executors and when he had an adverse interest and was acting on behalf of himself individually and of the bank, of which he was the president. (*Squires* v. *Ordeman,* 194 N. Y. 394.)

CUDDEBACK, J. The defendants contend that the note sued on was without consideration. It is difficult to frame a complete and accurate definition of what constitutes a sufficient consideration to support a contract, but this court has approved the following:

" A valuable consideration may consist of some right, interest, profit or benefit accruing to one party, or some forbearance, detriment, loss or responsibility given, suffered or undertaken by the other." (*Rector, etc., St. Mark's Church* v. *Teed,* 120 N. Y. 583, 586.) I think there was evidence upon which the jury might have found that some benefit accrued to the defendants from the note in question and that there was a sufficient consideration therefor within this definition.

It is necessary to keep in mind the salient features of the transaction which led to the making of the original note of $175,000. These may be briefly stated. The bank had sustained a loss of $175,000 which for some time had been represented on its books by worthless paper. There came a time when it was imperative that the bank should no longer deal with the deficiency in that way, and the president laid the matter before the executive committee. The bank could either take the

$175,000 out of its apparent surplus, or require some sufficient security to make the surplus good.

The president and members of the executive committee were all stockholders of the bank and it meant a loss to them through a fall in the value of their holdings if the surplus of the bank was reduced by the sum of $175,000. They, therefore, gave their note for the amount which they hoped the bank would in some way meet, but which nevertheless they agreed to stand back of. They gave their note and the bank's surplus was not depleted. Thus a contract was made upon a sufficient consideration between the maker and indorsers of the note on the one hand and the bank, a body corporate, on the other. Certainly those who became liable on the note secured a distinct benefit which accrued directly from the contract. Each share of stock which they held represented an aliquot part of the bank's assets and whatever increased the assets benefited the holders of the stock.

In *Dykman* v. *Keeney* (10 App. Div. 612, 619) the defendants were the directors of a banking corporation and they each made a note to the corporation for $10,000. The notes were made pursuant to an agreement which recited that doubt existed in the minds of the directors and in the mind of the superintendent of banks as to the soundness of certain of the bank's securities, and in order to remove such doubt and make the bank unquestionably solvent, the directors had each made his note for $10,000 to the bank. It was held that these notes were supported by a sufficient consideration. The court said: "While the question whether the capital was impaired at the time the notes were given was not determined, nor did the superintendent of the banking department make any requisition upon the directors to make good any specific deficiency, still the doubt existing on that question in the mind of the superintendent arising out of the character of some of the debts and bills receivable due to the bank and the interest of the directors in the continuance of the

bank as a sound financial and business institution, constituted a sufficient consideration to support the notes of the defendants given to make good any possible deficiency which did exist. These notes, therefore, became upon their delivery debts due to the bank."

The question in *Dykman* v. *Keeney* was again before the court (16 App. Div. 131) and the holding was the same, and the decision then made was affirmed by this court in 160 N. Y. 677.

In *Brodrick* v. *Brown* (69 Fed. Rep. 497) it appeared that a national bank had suspended business and was in the hands of a bank examiner under the Federal statutes. The examiner informed the directors that before the comptroller of the currency would permit the bank to resume business it would be necessary that the sum of $50,000 be raised and placed in the bank. Acting on this information, the stockholders voluntarily contributed and paid to the bank a sum equal to fifty per cent of their holdings and amounting to $50,000. It was held that the amount was not a loan to the bank but a contribution, and was an asset of the corporation. The court said: "The law is well settled that where stockholders voluntarily assess themselves, to relieve the corporation from pecuniary embarrassment, or for the betterment of their stock, whatever may be the occasion of the assessment, the advances thus made are not debts against, but assets of, the corporation."

In *Hope Mutual Life Ins. Co.* v. *Perkins* (38 N. Y. 404) the defendant gave to the plaintiff a note for $2,500. This was one of several notes given for the purpose of paying losses which might accrue on policies issued by the company after all the other funds in the hands of the company had been first applied. It was also provided that the company should pay interest to the makers of the notes. In a suit against the defendant it was objected that the note was without consideration. The court held that the provision for the payment of interest was a suffi-

cient consideration and also that the note was made to give the company credit with the public and thus induce individuals to insure with it. And the presumption was that they were thus induced to insure and that was a sufficient consideration.

*Hurd* v. *Kelly* (78 N. Y. 588) was an action by the plaintiff as receiver of the Third Avenue Savings Bank against the defendant and others upon a bond. The consideration mentioned in the bond was that the savings bank, as requested by the obligors, should continue its ordinary business until January 15, 1873, and the further consideration was the mutual covenants of the bond. The condition of the bond was that the obligors should each pay a specific sum, with interest. It appeared that the assets of the bank had been impaired and the bond was executed for the purpose of being exhibited to the banking department as an asset so that the bank might pass examination and inspection and be able to continue business. It was objected that the bond was without consideration, but the court held that the continuance of business by the bank and the incurring of new obligations incident thereto was a good consideration.

There was sufficient evidence within the doctrine of the decisions cited to go to the jury upon the question of consideration.

There are three other questions involved in the case. The first of these has reference to the presentment of the $150,000 note for payment. Of course, it was not intended at any time by the parties to the note that the maker, Sullivan, should be primarily liable thereon as the principal debtor. The understanding and agreement was that they all, maker and indorsers alike, should stand behind the note "not separately but collectively." In fact they were all makers, and those who were in form indorsers had no right to expect or require that Sullivan would pay the note. Under such circumstances, presentment for payment was not necessary. (Negotiable

Instruments Law, sections 130, 140; *Witherow* v. *Slay-back,* 158 N. Y. 649; *Haddock, Blanchard & Co.* v. *Haddock,* 192 N. Y. 499.)

The second question arises out of the cancellation of the $150,000 note. The evidence shows that the cancellation was made by the very individuals, except the defendant Albers, and except Tompkins, deceased, who are now charged with liability on the note. The original understanding, as has been said, was that the parties to the note should be liable collectively and not separately, and when the names of the indorsers were erased it was sought thereby to change this liability and make each responsible for his proportionate share of the note, and so each of them, when he crossed out his name as indorser, at the same time handed back to the bank a new note for one-ninth of the $150,000. This was done without the authority and without the knowledge of the board of directors.

Section 204 of the Negotiable Instruments Law (Cons. Laws, ch. 38) provides that " A cancellation [of a note] made * * * without the authority of the holder, is inoperative * * * but * * * the burden of proof lies on the party who alleges that the cancellation was made * * * without authority." The evidence to which reference has been made meets the burden of proof which the statute requires. While the defendant Albers did not take part in the cancellation of the indorsements, the validity of his indorsement was not affected if it is found that the cancellation of the others was unauthorized.

The third question is whether the defendant Sullivan by his indorsement of the $150,000 note as the executor of the last will and testament of Edward B. Tompkins, deceased, bound the estate of the decedent. It appears that Sullivan was only one of several executors of the Tompkins will, and the others are not made parties to this action. It is sufficient to say that he could not, without

the co-operation of the other executors, indorse the note so as to bind the Tompkins estate. (*Bailey* v. *Spofford*, 14 Hun, 86; *Finnern* v. *Hinz*, 38 Hun, 465.) The motion to dismiss the complaint as to the defendant Sullivan, as executor, was properly allowed.

I, therefore, recommend that the judgment appealed from be reversed and a new trial granted, with costs to abide the event as to the defendants, except David A. Sullivan, as executor of, etc., of Edward B. Tompkins, deceased, and as to said defendant the judgment be affirmed, with costs.

WILLARD BARTLETT, Ch. J., HISCOCK, COLLIN, HOGAN, CARDOZO and SEABURY, JJ., concur.

Judgment reversed, etc.