CLARENCE G. BLISS, APPELLANT, V. COBE S. VENNER ET AL.,
APPELLEES.

FILED APRIL 10, 1931. No. 27556.

*Clarence G. Miles* and *George H. Risser,* for appellant.

*Charles E. Matson* and *Richard O. Johnson, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY,
DAY and PAINE, JJ.

DEAN, J.

The Farmers & Mechanics Bank of Havelock, herein-
after called the bank, was declared insolvent July 17, 1929,
and was taken over by the department of trade and com-
merce. Subsequently, Clarence G. Bliss, secretary of the
above named department, began this action in the district
court for Lancaster county, wherein Cobe S. Venner and
Mintie Schmidt are named as defendants, to recover
$2,253.42, with interest at the rate of 10 per cent. per
annum. This sum, it is alleged, represents the balance due
on a promissory note in the principal sum of $2,500, which
was made and executed July 15, 1927, by Joe Dorfler, as
principal, and signed by defendants Venner and Schmidt,

as sureties. Dorfler was adjudged a bankrupt and the action was thereupon commenced against the defendants, as Dorfler's sureties, to recover the amount due on the note. The jury returned a verdict for the defendants and against the plaintiff receiver, and a judgment in pursuance of the verdict was rendered thereon. The receiver has appealed.

The defendants argue that, on or about July 15, 1927, Dorfler purchased a garage business in Havelock, including all of the stock, tools, office equipment, fixtures, and all of the accessories of the business generally. And they contend that they were induced by the bank officers to sign the note in suit upon certain oral representations made to them that Dorfler would execute and deliver to the bank a mortgage on the stock hereinbefore mentioned. Afterwards the mortgage was given by Dorfler to the bank, and, besides, he executed a chattel mortgage on a new Oldsmobile car in favor of the bank, and he also agreed to assign a policy of life insurance to the bank as additional security for the note in question here. But the defendants contend that the bank permitted Dorfler to exchange the Oldsmobile car for another car, and that later still another exchange in cars was made by Dorfler without an accounting to either the bank or the defendants in respect thereof. And defendants contend that the bank did not collect the $50 a month rent from Dorfler as agreed, and that the bank permitted Dorfler to dispose of his business without an accounting therefor to the real parties in interest. And the defendants also allege that, after the bankruptcy proceedings were instituted, Dorfler offered to withdraw his petition and reopen his garage business in an effort to pay the note, but that the bank refused to accept his offer. The contention is that they signed the note merely as an accommodation to the bank, and that they received no consideration therefor, and that they are therefore not liable for its payment.

From the submitted facts it appears that the garage building and the bank building belonged to defendant Schmidt. And it also appears that Dorfler purchased his

garage business from the former tenant and owner of the garage, namely, C. A. Cox. Some time in 1925 the evidence shows that Schmidt and Venner signed a note for Cox, which was subsequently renewed from time to time, the last renewal being shortly before the Cox garage was sold to Dorfler. And it also appears .that the Cox note was canceled at the time the garage business was sold to Dorfler.

From the evidence of Schmidt it appears that some time in May, 1928, after the note in suit was executed, he became the owner of more than $50,000 worth of bank stock, and was thereafter made president of the bank. And it also appears that both defendants were directors of the bank from thence until the bank was closed almost a year later. But the defendants testified that they had no knowledge that the note in suit had never been paid by Dorfler.

In view of the fact that the Cox note was canceled when the Dorfler note was signed by the defendants, and that Schmidt owned the garage that was rented to Dorfler, we think there was sufficient consideration to induce the signing of the note by the defendants and that they are bound thereby.

The defendants, as noted above, contend that the bank permitted Dorfler to dispose of his garage without an accounting therefor, but the evidence does not clearly appear to sustain this viewpoint. In fact, it appears that an inventory of the stock was taken some time after the note was signed, and that Schmidt himself collected the rent for the garage each month. Schmidt testified that the garage stock appeared to be undiminished and that he did not at any time observe a substantial dissipation of the stock.

Under our statutes, an accommodation party is one who has signed an instrument without receiving any value therefor, and for the purpose of lending his name as surety only. Comp. St. 1929, sec. 62-206. But where a promissory note is executed with certain defendants as sureties thereon, for the debt of another, the fact that such sureties were financially interested in the proposition for which

the note was given is sufficient consideration to negative the defense that they signed the note merely as an accommodation to the bank pursuant to the provisions of section 62-206, above cited. "A valuable consideration, sufficient to support a contract, may consist of some right, interest or benefit accruing to one party, or some forbearance, detriment, loss or responsibility given, suffered or undertaken by the other." *Union Bank v. Sullivan,* 214 N. Y. 332.

Defendants rely on an affirmance of the judgment from the fact that the bank cashier gave them assurance, as they allege, that they would never be called upon to pay the note. But in *Farmers Nat. Bank v. Ohman,* 112 Neb. 491, where a note was signed in reliance on an oral agreement that the signature was appended merely to assist the bank, and to satisfy the demands of the bank examiner, we held that such agreement did not constitute a defense to defeat recovery on the note. The following rule is announced in 3 R. C. L. 448, sec. 75: "Unless specially empowered to do so, he (a bank cashier) is not authorized to release, otherwise than in due course of business and on payment, the makers of notes or other debtors of the bank, or to release sureties or indorsers."

And in a recent case, where a bank president made an agreement with a defendant that such defendant would not be obligated on a note if he would sign it, the court held that such agreement was beyond the authority of the president to make. *Markville State Bank v. Steinbring,* 179 Minn. 246. And in *Farmers Nat. Bank v. Ohman, supra,* we held to the familiar rule that: "A promissory note, in the usual commercial form, is a complete contract in itself, and its terms cannot be varied or contradicted by parol evidence." And in the present case, where the cashier of the bank assumed to assure the defendant sureties that they would not be liable for the payment of the note in suit, as the defendants contend, we hold that such officer went beyond the scope of his authority in the premises.

Complaint is made of certain instructions given by the court and of the refusal to give certain other instructions tendered by the plaintiff. In its instruction numbered 9, the court informed the jury that if they found that the defendants were induced to sign the note as sureties on the representation that the note was amply secured, and if they found that the bank permitted such security to be dissipated, without being applied on the debt, they should find for the defendants. We think the court erred in submitting this instruction to the jury, from the fact that it is not disclosed by the evidence that the bank permitted, nor that it had knowledge of, the dissipation of the security given for the payment of the note.

Under the law applicable to the facts, we conclude that the judgment of the district court must be and it hereby is reversed, with directions that a judgment be entered in favor of the plaintiff receiver for the amount due on the promissory note, as above noted, with interest thereon at 10 per cent. per annum from maturity.

REVERSED.