JAMES A. LEARY, as Executor, etc., of WILL W. BLACKMER, Deceased, Respondent, *v.* CAPITOL TRUST COMPANY OF SCHENECTADY, NEW YORK, and Another, Appellants.

Third Department, June 30, 1933.

*George B. Smith*, for the appellants.

*Leary & Fullerton* [*James A. Leary* of counsel], for the respondent.

HILL, P. J.   The two causes of action upon which plaintiff has recovered arose from transactions between the defendant trust company and plaintiff's testator.   The trust company was organized as a banking corporation in 1925, under the laws of New York, with a paid-in capital of $300,000 and a surplus paid in by stockholders of $100,000.   Plaintiff's testator was one of the fourteen directors.   In September, 1931, the business of the trust company was suspended under an order of the Superintendent of Banks, who assumed charge for the purpose of liquidating its assets for the benefit of its creditors.

The causes of action arose out of separate transactions.   The facts concerning the first are connected with the organization of the company and the procuring of quarters in which business was to be conducted.   To secure the location desired by the directors, it was necessary to purchase an outstanding lease.   This expense, together with the cost of furniture and equipment, including a vault, was $125,000.   The Superintendent of Banks refused to permit the investment of that amount from the capital and surplus, and required that the trust company be reimbursed for the amount expended.   Whereupon, the directors, including plaintiff's testator, each acting in an individual capacity, procured a loan from a bank in an adjoining city and made the required reimbursement.   The lease of the premises was then taken in the name of a nominee of the directors, to whom title to the furniture and equipment was also transferred.   The trust company made an agreement with this

representative fixing the annual rental at $12,000. As the rent accrued it was deposited in a rent account carried on the books of the company, and as a balance accumulated, payment was made therefrom on the interest and principal of the directors' loan. This continued until February, 1930, when a representative of the Banking Department criticized the rent payments. After negotiations with the Superintendent of Banks and with his approval, $60,000 of the trust company's funds were applied to the payment of the note, and the balance of about $46,000 was paid by the several directors from their personal funds. The contribution by plaintiff was $3,500, the amount recovered in the first cause of action. Thereafter payments of rental ceased and the title to the lease and the equipment was taken by the company and carried as a $60,000 asset.

Banking is affected with a public interest. The State may fix the minimum of capital of a bank and restrict its investments. (*Noble State Bank* v. *Haskell*, 219 U. S. 104; *Matter of Morse*, 247 N. Y. 290.) The Superintendent of Banks may refuse to permit a corporation to begin the banking business if in his opinion it is to be conducted in an unsafe manner, or having been begun, he may suspend its operation and liquidate the business. It was not an arbitrary exercise of power to withhold approval of the investment of nearly one-third of the trust company's total assets in a lease, fixtures and furniture. The amount of the reimbursement made by the directors did not appear on the books of the trust company as a debt and obligation, and when statements of the financial condition were published it was not included among the liabilities. Balance sheets taken from the books of a bank are published for the information of depositors. These statements, made under the direction of the directors, may be relied upon by the depositors, and directors are estopped from satisfying undisclosed liabilities to themselves from funds which otherwise would be applied to the payment of depositors. (*Ultramares Corp.* v. *Touche*, 255 N. Y. 170; *Hurd* v. *Kelly*, 78 id. 588.)

The liability to plaintiff, if any, arises from a transaction wherein the directors, acting for the trust company, dealt and bargained with themselves individually. This statement is not intended to imply bad faith. The public interest in banking corporations is largely concerned with the safety of deposits and the incidental honoring of checks which circulate as money. A primary purpose of official supervision is to effectuate this safety and stability. It is accomplished by giving to disinterested and technically trained public officials the right, under guiding statutes, to control the investments, and the application of the moneys of a banking cor-

poration, including its own capital and surplus. The Superintendent of Banks, exercising what now seems a wise discretion, refused to approve the use of nearly one-third of the capital and surplus of this trust company for a lease and furnishings. The directors, with faith in the venture in which they were stockholders, and believing in the wisdom of the expenditure, used their own funds, expecting repayment from profits. Profits not having accumulated, they may not be reimbursed from moneys otherwise applicable to the payment of depositors. Official supervision would be to little purpose if such private financial losses of directors are paid from corporate funds otherwise applicable to the debts owing depositors. The principle is not different from that dealt with in *Union Bank* v. *Sullivan* (214 N. Y. 332); *Hope Mutual Life Ins. Co.* v. *Perkins* (38 id. 404); *Hurd* v. *Kelly* (*supra*), and *Dykman* v. *Keeney* (16 App. Div. 131; affd., 160 N. Y. 677). Under the doctrine of those cases, no recovery can be had on this cause of action.

The counterclaim was properly dismissed. Thereunder defendants sought to recover the payments made on the directors' note. There is no proof that the lease was improvident. The trust company had enjoyed the use of the premises, fixtures and furniture, and payment of rent was proper.

The second cause of action is connected with the fact that a corporation owing the trust company $30,000 was adjudged a bankrupt, which reduced the assets of the trust company by that amount and required that it be charged to surplus. It is recited in the stipulated facts that a reduction of $30,000 in the surplus " would undoubtedly have caused a run on the said Capitol Trust Company and in all probability it would have been compelled to close its doors at that time." Eight directors, including plaintiff's testator, acting individually, borrowed $30,000 by negotiating a note. The stipulation as to facts recites: " That the proceeds of said note were turned over to the Capitol Trust Company Trustee, and no part of it was turned over to any of the individuals named in said note. That the proceeds of said note were put into an account in the Capitol Trust Company entitled Capitol Trust Company Trustee and the obligation of the Service Appliance Company was then written off and the bank was able to continue doing business without showing a reduction of surplus in the sum of $30,000.00."

The trust company did not receive this money as a trustee for the makers of the note, or any other parties. It became the property of the trust company and was substituted for the note of the bankrupt debtor. The payee of the directors' note received about

$15,000 from the assets of the bankrupt estate of the Service Appliance Company, and credited it thereon. The remainder was paid by the makers, the contribution by the plaintiff being $1,875. It is for this sum that judgment was given in the second cause of action.

This advancement did not increase the assets of the bank or repair the loss of surplus if there was an obligation to repay it from funds other than those received from the bankrupt estate. The benefit received by these donors as stockholders and directors was a consideration for the advancement. The advance constituted an asset of the bank and not a debt. (*Union Bank* v. *Sullivan, supra; Hurd* v. *Kelly, supra; Dykman* v. *Keeney, supra.*) No recovery can be had on this cause of action.

The judgment in favor of the plaintiff should be reversed on the law and facts, with costs, and the complaint dismissed, with costs. The judgment dismissing defendant's counterclaim should be affirmed, with costs.

RHODES and BLISS, JJ., concur; CRAPSER, J., dissents and votes to affirm the judgment appealed from.

Judgment in favor of the plaintiff reversed on the law and facts, with costs, and complaint dismissed, with costs. Judgment dismissing defendant's counterclaim affirmed, with costs.

The court reverses findings of fact number fourteenth, twenty-first and twenty-seventh. The first, second, third, fourth, seventh, eighth and ninth conclusions of law are disapproved and reversed. The court makes the following new finding of fact: That the $125,000 was advanced to the Capitol Trust Company to reimburse it for an unauthorized expenditure. That repayment could be made only from the rental paid by the Capitol Trust Company for the use of the premises, fixtures and furniture. That $30,000 was advanced by plaintiff's testator and his seven associates to the Capitol Trust Company to become a part of its assets. The amount of such advancement could be repaid only from funds received on the note of the bankrupt Service Appliance Company.