S<small>UCCESSION</small><br>O<small>F</small><br>B<small>RISCOE.</small>

---

## F<small>REEMAN</small> *v.* S<small>AVAGE</small> et al.

Plaintiff sold property to defendant for a certain price, on credit, taking an endorsed note for the amount. A creditor of the latter having seized the property under a *fi- fa.,* plaintiff enjoined the proceedings, claiming to be the owner, under a deed from defendant to him by which the property was reconveyed for the amount of the note; but the injunction was dissolved, the reconveyance being considered as simulated. In an action by the plaintiff, against the endorsers on the original note: *Held,* that whether the reconveyance was executed in good faith, or was simulated to defeat the rights of the seizing creditor, plaintiff cannot be permitted to treat it as other than genuine, and that, considered as such, it extinguished the note.

A
PPEAL from the District Court of Carroll, *Wilson,* J.
    *T, J. Lacy* and *Bemiss,* for the appellant.

*Selby,* for the defendants. *Thomas,* on the same side, contended that the note sued on was extinguished by the plaintiff's re-purchase of the property, for the price of which it was executed.

The judgment of the court was pronounced by

S<small>LIDELL</small>, J. This suit is brought against the maker and endorsers of a promissory note for $2400, dated December 21st, 1840, and payable 1st February, 1842. *Savage,* the maker, was dismissed upon a plea to the jurisdiction, and the suit was tried against the endorsers, who had judgment in their favor in the court below. The plaintiff has appealed.

This note was paraphed *ne varietur,* as is usual in case of mortgage notes, and it satisfactorily appears from the evidence before us that its consideration was a sale of certain slaves by *Freeman* to *Savage.* In the year 1843, a judgment creditor of *Savage,* one *Wade,* seized the slaves under execution, when

FREEMAN.
v.
SAVAGE.

*Freeman* arrested the judicial sale by injunction, alleging, under oath, that he was the lawful owner of the slaves. He prayed for a decree recognizing him as the lawful owner of the slaves, and demanded their release from execution, and restoration to him.    To sustain his claim as owner, thus alleged under oath, *Freeman* offered in evidence, at the trial of the injunction, a document executed by *Savage* in *Freeman's* favor, purporting to bear date the 10th March, 1841, by which for and in consideration of $2400, the exact amount of the note upon which this suit is brought, certain slaves therein described are sold and declared to be delivered by *Savage* to *Freeman.*

Whether this instrument re-conveying the slaves was really executed in good faith, and at the time of its date, by *Freeman* to *Savage*, and a real delivery of the negroes was then made, as therein declared, or whether, on the other hand, the sworn petition in the injunction suit was false, and the document thus offered to sustain it, was a mere simulation, contrived and executed to defeat the rights of *Wade*, are questions which the plaintiff cannot be permitted to raise.    We must therefore consider the document as true, and as exhibiting, what it purports to establish, a sale and delivery to *Freeman* of the negroes, the original sale of which was the consideration of the note upon which this suit was brought.    Thus, according to the plaintiff's own showing, there was a retrocession extinguishing the note.    We wish not to be understood as saying that we believe this instrument was really executed as it purports to be.    We express no opinion on that question.    We have considered it in the only light in which the plaintiff can be permitted to treat it, as genuine and true.    That it was ineffectual in the suit against *Wade*, is no reason why the plaintiff in this cause should be permitted to question its genuineness or truth.    What he has thus said and done, the policy of the law will not allow him to gainsay or deny.

*Judgment affirmed.*