(16 App. Div. 131.)

### DYKMAN v. KEENEY et al.

(Supreme Court, Appellate Division, Second Department. April 26, 1897.)

1. BANKS—ASSETS—PAYMENT OF NOTES.

A bank, which held several notes indorsed by and discounted for one K., discounted for one H. notes aggregating the amount of the K. notes, made by the same persons, and indorsed by H., but without the indorsement of K. H. then gave his check to the bank for the amount of the K. notes, and took them up, and the account of K. was marked on the books of the bank as paid. *Held*, that the K. notes were paid, and therefore were not to be deducted from the resources of the bank as losses (Laws 1893, c. 696, § 26), because they had remained "due without prosecution" for more than one year.

2. SAME—NOTES GIVEN BY DIRECTORS.

Notes given to a bank by its directors under an agreement reciting that the purpose of the notes was to remove any doubts as to the solvency of the bank, and to make it unquestionably solvent, constitute an asset of the bank from the time of delivery.

Appeal from trial term, Kings county.

Action by William N. Dykman, as receiver of the Commercial Bank, against Seth L. Keeney and others, to recover from defendants, as directors of said bank, the amount of a dividend declared by them at a directors' meeting on June 28, 1892, and paid on July 5, 1892, amounting to $4,293. From a judgment in favor of defendants, entered on a verdict rendered by direction of the court, plaintiff appeals. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

James C. Bergen, for appellant.
Jesse Johnson, for respondents.

HATCH, J.   When this case was before us upon a former appeal, we held that the liability created by section 23 of the stock corporation law was to be treated as a provision for indemnity for loss which the corporation or its creditors might sustain from the payment of an illegal or unauthorized dividend.   Dykman v. Keeney, 10 App. Div. 610, 42 N. Y. Supp. 488.   We do not regard this question now as an open one, or one that we are called upon to further discuss.   In fact, the decision upon the former appeal is conclusive of all the questions which are raised by the present record.   The learned counsel for the appellant, however, contends with earnestness and ability, which distinguish all his efforts, that we have misapplied rules of law which are controlling in the disposition of this case upon two questions. While we regard the points which he now makes as having been settled, in effect, by our former decision, as such questions were not elaborately discussed, we conclude to further consider them.

The transaction by which the Knowlton notes were surrendered and the Hassel notes taken by the bank, it is claimed, did not operate as payment of the Knowlton indebtedness within the meaning of the statute.   It is conceded that the effect of this exchange was to discharge Knowlton from all liability to the bank, and that it thereafter had no interest in or control over the notes and obligations, representing the loans made to him, which it formerly held.   It must also be admitted that the Hassel notes represented debts due the bank. They constituted fresh, living contracts, to the same extent, and subject in every respect to enforcement in like manner, as though actual moneys had been taken from the bank in exchange for them.   But it is claimed, in the language of the learned counsel, "that the statute refers neither to debtor nor to security nor to change of either one. * * * It can never be contended that by the surrender of a debtor's liability, and the canceling of his notes, either by voluntary action on the part of the directors of this bank, or by the accepting of a new note, that the debt itself, within the meaning of this statute, has been paid."   So far, at least, as form goes, and as matter of fact, there existed no debt of Knowlton's due to this bank.   There did exist, in form and in fact, debts in the form of notes by various parties, indorsed by Hassel for given amounts.   Did they operate as payment of the Knowlton obligations?   As between Knowlton and the bank, we think they did.   His notes were surrendered up to Hassel, and his account was marked "Paid" upon the books of the bank, and there is no pretense but that the bank at that time intended to, and did, discharge him from further liability to it.   By this transaction his debt was extinguished, and the notes indorsed by Hassel represented that debt.   They were new contracts between different parties, and had the force of discharging the old debt.   Mayer v. Heidelbach, 123 N. Y. 332, 25 N. E. 416.   The rule would be different if the new notes were given between the same parties in extension of the original debt. Such is the case of Iron Co. v. Walker, 76 N. Y. 521, and other cases cited by the appellant.   It is argued, in the brief of appellant, that the onus rested upon the defendants to show that the intent of the bank was to extinguish the Knowlton debt, and this is undoubtedly true. But we think that sufficient appeared to establish that fact, without

giving effect to what we regard as a concession by the plaintiff to that effect. If the plaintiff desired to controvert it, he should have asked that the question be submitted to the jury. He made no such request, but acquiesced in the statement of the transaction as it appeared upon the books of the bank, when the court's attention was called to it. We think he is now concluded thereby, and that we must dispose of the case upon the assumption that the bank received the Hassel notes as payment of Knowlton's pre-existing obligations. As between these parties, therefore, Knowlton's obligations were paid.

This brings us to the question whether, for the purposes of the statute, they may be regarded as paid in the sense that the Hassel notes might be treated by the directors of the bank as an asset upon which a dividend might be based. The language of the statute is that the bank shall charge in the account of profit and loss, and deduct from the actual profits, all losses sustained by it, and they shall include as losses all debts owing to it, which shall have remained due without prosecution, and upon which no interest shall have been paid, for more than one year. Banking Laws (Laws 1892, c. 689, § 26). It does not appear that the Knowlton notes had remained due without prosecution for more than a year, and only in the sense that no money was actually paid had interest remained due. In fact, the notes had been renewed, for principal and interest, as they fell due from time to time. We think that the intent and meaning of this statute is that it embraces debts due for which no provision has been made by those liable thereon for a year, and upon which interest has not been paid. We do not think that it was intended to relate to, or that it embraces, notes which have been received from time to time in the ordinary course of business, and which by the terms of the renewal obligation are not then due, even though the renewal obligation embraced interest as well as principal, and the debt had been continued beyond a year. This was a bank of discount, in which the assets of the bank consisted largely of notes discounted and in renewals thereof, and in the usual prosecution of the business it might frequently happen that extensions and accommodation to its customers would result in its possession of perfectly good notes, where no payments either for principal or interest have been made within a year in money, and yet where the bank held a live and enforceable obligation not yet due by its terms. To hold that such an obligation must be charged up as a loss, and deducted from the assets of the bank, for the purpose of the declaration of a dividend by the directors, would, we think, impose an obligation not contemplated or intended by the statute. Such construction would certainly render the declaration of a dividend by the directors at any time extremely hazardous. The statute is abundantly satisfied by limiting its application to those debts which have become due, and remain unprosecuted, and upon which no interest has been paid for a year. Such are its terms, and such we conceive to have been its spirit and intent. Of course, if the contract was renewed for the purpose of evasion of the statute, the directors might be held liable; and there may be other circumstances which would reach a like result. But there is nothing in the present case which has a tendency to show that the acceptance of the Hassel notes in the discharge of Knowlton's

debt was not done in good faith and in the usual course of business. We see no reason, therefore, for departing from the construction which we have heretofore placed upon this transaction.

We are requested, and it seems to be necessary, to determine whether the notes given by the directors of the bank constituted the same an asset of the bank. Each of the notes in form was a promise by the maker to pay to the bank the sum therein specified; each was delivered to the bank, and the bank held each from the date of its execution; and the respective sums secured thereby have been paid by the makers to the receiver of the bank. In form, therefore, the notes presumptively were an asset of the bank, and the form has been reduced to substance by payment. Their legal effect is, of course, to be considered with the contract which accompanied their creation and formed a part of the transaction. The agreement recites that the notes were given to make the bank unquestionably solvent. Unless a liability attached to the notes upon their delivery to the bank, it was no more solvent after the transaction than before. The purpose undoubtedly was, as expressed, to remove doubt as to the solvency of the bank, and to create a condition which removed that doubt, not as a mental condition, but as an existing fact. It was, in effect, as we view the transaction, a contribution of capital to the bank for the purpose of creating a liability in support of the debts, regarded doubtful or bad, then held by the bank. This proposition was not to provide for a contingent liability, in the sense that the bank should have no interest therein, unless insolvency was subsequently ascertained to exist. But it was to create a present condition of undoubted solvency. And, in order that this should be accomplished, it was essential that the notes have present, actual vitality as an absolute promise and liability to pay the money. With respect to the enforcement of the liability, it doubtless rested with the bank, to be exercised as contingencies might arise. There is nothing in the agreement or its legal effect which provides for postponement in the payment of the notes to any particular period of time. It said that the notes together should make a total sum of $80,000. This could not be, if no liability existed to pay this sum if required by the bank at the time payment was demanded. It is not necessary for us at this time to determine just what the legal status was with respect to those notes upon any supposititious case. That they related to the then existing condition of the bank is clear. That they were intended as a sustaining contribution to the bad and doubtful debts then existing is, we think, to be fairly gathered from the instrument which accompanied their delivery. Whether they could be enforced for liabilities which might thereafter be created by the bank, and which at the time had no existence, may well be doubted. We are not called upon to determine that question. And we do not now determine any other question in this respect than that the notes at the time of their delivery constituted an asset of this bank, based upon the view that it was the intent of all the parties that these notes should constitute security for a fund to care for the bad and doubtful debts then held by the bank. They have been paid in full to the receiver, and he should be now held estopped from questioning their existence as an asset. Such was their legal effect, and

they must be so considered in subsequent litigation, if the ·question becomes important.

It follows, from these views, that the judgment should be affirmed. All concur.