SOMMERVILLE, J.
The Bank of Angie and the Commercial Bank of Bogalusa, being in insolvent circumstances, were closed by order of the state .examiner of state banks, and special agents were duly appointed to liquidate them.
The plaintiff, H. H. Kennedy, a depositor in the Bank of Angie to the extent of some $7,000, presented a petition to the said examiner, objecting to the payment to the special liquidator of the Commercial Bank of the sum of $11,000, appearing on the books of the Bank of Angie to the credit of the deposit account of said Commercial Bank, for reasons which may be stated as follows:
That said sum is and was held by the Bank of Angie as collateral security for a loan of $11,660 from said bank to the Commercial Bank; that said loan was negotiated by H. D. Bickham, president of the Commercial Bank, who on January 7, 1913, signed a note for said sum in favor of the Bank of Angie, and the proceeds, the sum of $11,000, was placed directly to the credit of the Commercial Bank, under a contemporaneous agreement between said Bickham, president, and the president and cashier of the Bank of Angie, that the same was for the benefit of the Commercial Bank, and was to remain on deposit in the Bank of Angie without being subject to check, and as collateral security for said loan. That subsequently, on January 14, 1913, “said loan was shifted by substitution, in lieu of the H. D. Bickham note, one note of the Angie Mercantile Company and one note of W. E. Douglas, for $5,S30 each.” That said substitution was agreed upon between Bickham, president of the Commercial Bank, and Douglas, individually, and as president of the Angie Mercantile Company, and as a director of said bank on one part, and W. W. Warner and R. V. McCarthy, president and cashier, respectively, of the Bank of Angie, on the other part; all subject to the same understanding and with reference to the said deposit and note of Bickham. Neither he nor Douglas nor the Angie Mercantile Company derived any benefit from said transaction; “and it was merely a subterfuge which was adopted for the purpose of obtaining money and credit for the benefit of the Commercial Bank of Bogalusa.”
“That all the transactions and arrangements were made without the knowledge or consent of the board of directors of the Bank of Angie. That after they had become known to the said board of directors of the Bank of Angie they immediately began to demand the recalling of said transaction. That the president of the Bank of Angie, W. W. Warner, and the cashier, R. V. McCarthy, had no authority to bind the bank in this matter, the said loan being for an amount almost equal to the capital stock of the said Bank of Angie.”
That the said Bickham, president, was acting in behalf of the said Commercial Bank, and that the said bank is estopped from claiming said credit of $11,000, “for the reason that the entire proceeds of said loan went for the benefit of the said Commercial Bank of Bogalusa, and the directors of the said Commercial Bank of Bogalusa knew or could have known that such was the case, and they further knew or could have known that at no time since said loan was made would it have been possible for the said Bank of Angie to have paid said ostensible deposit.”
That the said Bickham endeavored to secure a release of a portion of said ostensible deposit for the use of the Commercial Bank, and for that purpose communicated with the president and cashier of the Bank of Angie, who emphatically refused to release any of said deposit.
The petition closes as follows:
“Petitioner submits further that the purported or ostensible claim of the Commercial Bank of Bogalusa against the said Bank of Angie for $11,000, as herein set out, has not been rejected, and he therefore prays that you submit this objection to the payment of same to the honorable Twenty-Sixth judicial district court of Louisiana for' Washington parish, in accordance with the provisions of section 5 of Act No. 300 of the General Assembly of Louisiana, for adjudication thereon.”
On receiving this petition the state examiner of state banks presented his petition to the judge of said court, who ordered the same to be filed, and service made on the special agents in charge of said banks.
J. S. Brock, Jr., special agent in charge of the Bank of Angie in liquidation, intervened, and joined the plaintiff in opposing the allowance -of the claim of the Commercial Bank to said deposit, and prayed that the same be rejected.
Daniel T. Cushing, special agent in charge of the Commercial Bank of Bogalusa, filed an answer which may be stated as follows:
*677 1. Respondent admits that the hooks of the Bank of Angie show a credit of $11,000 in favor of the Commercial Bank, but denies that that sum is held by said Bank of Angie as collateral security as alleged in the petition, and further denies that the Commercial Bank borrowed said sum, or any part thereof, from the Bank of Angie.
Respondent further averred that, on the contrary, said Bank of Angie is and was indebted unto the Commercial Bank of Bogalusa in the full sum of $11,000, for the reasons:
That in December, 1912, the state examiner of state banks, on examination, found that the capital of the Commercial Bank had been impaired to the extent of $10,684, and thereupon so notified the state auditor of public accounts, who notified the officers of the bank that, unless said impairment was made good or restored within the time required by law, the bank would be closed in accordance with section 17, Act No. 179 of 1902, which act was amended by Act No. 152 of 1910.
That a meeting of the board of directors of the Commercial Bank was held on January 3,. 1913, at which Houston D. Bickham, president, and owner of a majority of the stock of said bank, stated that he would agree individually to raise, donate, and make good to the Commercial Bank the sum of $11,000 to cover said impairment of the capital stock.
That said Bickham, pursuant to said agreement, on January 7, 1913, negotiated a loan at the Bank of Angie for $11,000 on his personal promissory note, secured by 110 shares of the capital stock of said Commercial Bank belonging to him. That by direction of Bickham the said sum was placed to the credit of the deposit account of the Commercial Bank on the books of the Angie Bank, and was also credited on the books of the Commercial Bank for the purpose of making good the impairment of its capital stock.
That the Commercial Bank notified the state bank examiner that the impairment of the capital stock had been made good in cash as required by that official, and that said deposit of $11,000 has ever since been carried on the books of the Commercial Bank as one of its live assets.
That thereafter the said bank continued in business until May 28, 1913, when it was closed by the said state bank examiner.
Respondent denied the alleged parol agreement between Bickham, president, and the Bank of Angie, as set forth in the petition, and averred that the officers of the Angie Bank well knew that the money was borrowed for the purpose of making good the impairment of the capital stock of the Commercial Bank, and that said bank could not borrow money on its own capital stock, and that said Bickham in said transaction was acting in his individual and personal capacity.
That the Bank of Angie, its officers and agents, have always carried said deposit on their books as belonging to the Commercial Bank, and as one of the liabilities. of said Bank of Angie.
That said deposit was included in the liabilities of said bank, in a sworn statement furnished by its president to the state examiner of state banks on March 1,1913, which a few days later was published in a newspaper in the parish of Washington, as directed by the statute.
Respondent pleaded that the facts stated estopped the Bank of Angie and its officers to deny said deposit, and to assert that there was any secret oral agreement that said deposit should be held as collateral security to secure the payment of the note of Bickham, as alleged in the petition.
Respondent denied that the Commercial Bank was a party to the substitution of the notes on January 24, 1913, as alleged in the petition, or had any interest therein, or was privy to any of the alleged parol agreements or understandings set forth in the petition.
Respondent further averred that, if H. D. *679 Bickham and Warner, president, and McCarthy, cashier, of the Bank of Angie, made any such agreement as set forth in article 1 of the petition, the same was against good morals, and a willful fraud practiced upon the banking department of the state of Louisiana, and that the said Bank of Angie and its officers and agents are bound by their own acts and declarations, and are estopped to urge their own turpitude.
Respondent further averred that the president and cashier of the Bank of Angie did have power and authority under its°charter and by-laws to bind said bank in said transaction, as to which the Commercial Bank was an innocent third person.
Respondent prayed that the plaintiff’s de-' mand be rejected, and for judgment recognizing the Commercial Bank as the owner of said deposit of $11,000, and, as such, entitled to demand and receive payment thereof.
Respondent made a like answer to the petition of intervention.
The case was tried, and judgment was rendered in favor of the plaintiff and the intervener as prayed for. The defendant has appealed.
It was admitted that H. H. Kennedy was a depositor 'of the Bank of Angie, as alleged in the petition.
On January 7, 1913, Bickham executed his individual note for $11,660 to the order of the Bank of Angie, secured by shares of stock of the Commercial Bank, which were owned by him. The Bank of Angie discounted the note, and the net proceeds ($11,000) were credited to the account of the Commercial Bank of Bogalusa, and $660 was credited to the interest account of the Bank of Angie.
McCarthy’s testimony on the subject-matter of the alleged parol agreement with H. D. Bickham Is, in effect, as follows:
He was cashier of the Bank of Angie on January 7, 1913, and after that date the Commercial Bank never had, on the books of the Bank of Angie, a credit of less than $11,000. The agreement between Mr. Bickham and Dr. Warner, president, was:
“That the proceeds of the note were to be placed to the credit of the Commercial Bank of Bogalusa, and they were not to be checked against, or that they would not draw below $11,000.” ,
That the proceeds of the note were pledged to the Bank of Angie. In May, 1913, said bank refused to permit Bickham, as president of the Commercial Bank, to draw on said deposit.
The witness supposed that he was dealing with Bickham as an officer of the Commercial Bank.
The note of Bickham was taken up by two notes, one signed by the Angie Mercantile Company, per W. E. Douglas, president, and the other by W. E. Douglas, who was also a director of the Angie Bank. Notes aggregating $11,660 were received by said bank, and charged to bills receivable. The Bickham note was marked paid, canceled, and returned to him. The debt was novated. The capital stock of the Bank of Angie was only $15,000, and the above transaction showed a loan of $11,000 to one person.
On cross-examination McCarthy said: The note of Bickham was discounted, and $660 was earned as interest by the Bank of Angie. The Bickham note for $11,660 was secured by 110 shares of the stock of the Commercial Bank standing in Bickham’s name. This collateral was indorsed on the back of the note, but nothing was indorsed thereon showing that the money was to be held by the Bank of Angie. There was no written agreement between Bickham and the officers of the Bank of Angie. The cashier knew nothing of Biekham’s authority in the premises, except from the transaction and agreement. The loan was made as Bickham negotiated it, and the agreement was that the $11,000 was to be held by the Bank of Angie as collateral to secure the Bickham note. The cashier considered the transaction as a *681 loan. Bickham said that he wanted the loan to use as a reserve, and that he would leave the money at the Bank of Angie as a reserve.
The sworn statement of the condition of the bank on February 25, 1913, signed by the president and cashier, was taken from the books of the Angie Bank, and was a true statement of its affairs as they stood on the books at that time. The item of liabilities in said statement was made up in part of the item of $11,000 due the Commercial Bank, which appeared on the books as an individual deposit subject to check.
The substitution of the notes was made at Bickham’s suggestion, because one loan of $11,000 looked too large.
The cashier understood that the loan was for the benefit of the Commercial Bank, which appeared in the transaction only as the donee of the proceeds of the Bickham note.
The two substituted notes were secured by the same 110 shares 'of stock pledged to secure the Bickham note.
The cashier acted in good faith in this transaction, and the Angie Bank refused to make the loan until the agreement was made to allow the money to remain in said bank as security.
Dr. W. W. Warner, former president of the Bank of Angie, as a witness, corroborated the testimony of R. Y. McCarthy, the former cashier, as to the transaction of January 7, 1913, with Mr. Bickham, president of the Commercial Bank. Dr. Warner stated that the transaction was had with Mr. Bickham as the representative of the Commercial Bank, and as having entire control of its affairs; that Mr. Douglas refused to sign the two substituted notes until he knew that the money was to remain in the Bank of Angie.
Dr. Warner further testified that the transaction was not fictitious, but real, and that Mr. Bickham wanted the credit “to show up as a reserve for the Commercial Bank; that the transaction was only an accommodation to said bank, and the entries on the books of the Bank of Angie did not represent real money; that said bank made no profit on the transaction, and has never received one cent from the Commercial Bank for the credit of $11,000.
Mr. Rives, assistant state bank examiner, testified that the greater part of the $11,000 went directly to the credit of interest and discount on the books of the Commercial Bank, and they do not show that said credit was the result of any check that could have been given. Mr. Rives further testified that the payment of said sum of $11,000 would have taken all the cash and reserve of the Bank of Angie.
Mr. Houston D. Bickham did not testify, and it was admitted by counsel in argument at the bar that Mr. Bickham is confined in the state penitentiary for certain violations of the banking laws, which have nothing to do with the instant case.'
L. L. Richardson, former cashier of the Commercial Bank of Bogalusa, testified in behalf of the defendant, in substance, as follows:
“The Commercial Bank had to its credit with the Bank of Angie on January 7, 1913, more than $11,000, and the account was subject to check. Mr. McCarthy told him so. Mr. Bickham went to the Bank of Angie and got $11,000 to make good the impairment of the capital stock of the Commercial Bank, and brought back a deposit slip for that amount signed by McCarthy, cashier, reading as follows: ‘Commercial Bank as a depositor with the Bank of Angie on note No. 1223 for eleven thousand dollars.’ This cheeking account never got below $11,000. The money represented by the deposit slip was credited as follows: ‘Undivided profits of ten thousand six hundred and eighty-four dollars and eighty-three cents,’ and $316 to the personal account of Houston D. Bickham. The Commercial Bank did not borrow any money to make good the impairment of its capital stock. The item of resources of said bank on February 25, 1913, sworn to by witness and Bickham, and published, did not include an item of $11,000 borrowed from the Bank of Angie.”
*683 On cross-examination the same witness testified that the $11,000 was the personal money of Mr. Bickham, out of which he donated $10,684 to the Commercial Bank of Bogalusa; that he knew that Mr. Bickham borrowed the money, because he left the bank to go to the Bank of Angie for that purpose, but that he did not know what agreement there was between Mr. Bickham and said bank; and that Mr. Bickham said he had borrowed the money himself. The witness further testified that his bank got no interest on the loan from the Bank of Angie, but paid interest on the loan after January 1st, because “we carried it as a reserve.”
Mr. McCarthy, in rebuttal, testified that he never told Mr. Richardson that the deposit of $11,000 was subject .to check, but, on the contrary, informed him of the details of the agreement of January 7, 1913.
Mr. W. L. Young’s testimony shows that he, as state bank examiner, notified the Commercial Bank to make good the impairment of its capital, and told Bickham, the president, that his bank could not borrow money for that purpose, and that any sum of money advanced by officers or stockholders of said bank to make good said impairment would be considered a donation.
It appears from the minutes of the board of directors of the Commercial Bank that Bickham, as an individual, undertook to raise the sum of $11,000 to make good the impairment of the capital stock of said bank. The evidence shows that he discounted his own note, secured by his own shares of stock, and that he had the proceeds put to the credit of the Commercial Bank in the Bank of Angie.
The Bank of Angie issued a deposit slip for the $11,000 in the name of the Commercial Bank, which was delivered to and accepted by the Commercial Bank.
This was, in effect, a donation made by Bickham to the Commercial Bank, of which he was president, in accordance with the requirement of the state examiner of state banks, in order that the capital stock of that bank should be restored, so that it might continue to do business.
A similar condition of affairs existed in the case of the People’s Bank of New Orleans, which is reported in 133 La. 745, 63 South. 310, in the case entitled Wright v. Gurley/ where it was held that the deposits of checks of stockholders to make good the capital stock were donations to the bank, and could not be recovered by the stockholders making the deposits.
If there was a secret oral agreement between Bickham and the officers of the Bank of Angie, as testified to by the latter, and as already set forth herein, the Commercial Bank was not a party thereto, and it is not bound thereby. It was an innocent third person to such agreement, and it is not estopped to claim the donation made by Bickham to it.
The Bank of Angie, through its officers, sent to the state examiner of state banks a sworn statement, and under the heading of “Liabilities” was $11,000 among the “individual deposits subject to check.” That statement was duly published in a newspaper of Franklinton. The books of the bank showed, and the cashier swore to the assistant bank examiner, that this deposit belonged to the Commercial Bank of Bogalusa. The latter bank made a similar statement, and its cashier swore on the trial of the cause that said amount was subject to check by his bank.
These entries on the books of the banks and these sworn statements must prevail over a secret oral agreement which may have been made between the president of one bank with the officers of another bank which had for its object the concealing of the truth, and the deception of the public and the state officials charged with the examination of the said banks with a view of ascertaining their solvency. It would be against public policy and good conscience to hold otherwise.
*685 The Bank of Angie was a quasi public institution, . conducting business under limitations and restrictions contained in statutes of the state, and it was subject to examination by,’ and supervision of, state officers. Its regularly published statements were sworn to by its officers, and these officers will not be permitted to afterwards contradict these statements, and be heard to testify to the falsity of the records made by them.
If such a course of conduct were sanctioned, it would be impossible for the state officers, the public, and the court to ascertain the true condition of any bank. R. S. 877; Wright v. Gurley, 133 La. 745, 63 South. 310; Landwirth v. Shaphran, 47 La. Ann. 336, 16 South. 839; Pauley v. O’Brien (C. C.) 69 Fed. 460.
The policy of the law will not allow the officers of the Bank of Angie to gainsay or deny that which they have said and done in their written documents, book entries, and sworn statements to officers of the state and to the public. Briggs v. Stafford, 14 La. 381; Mathews v. Boland, 5 Rob. 200; Garthwaite v. Seip, 23 La. Ann. 218; Freeman v. Savage, 2 La. Ann. 269; Morse v. United States, 174 Fed. 539, 98 C. C. A. 321, 20 Ann. Cas. 938.
The legal title to the $11,000 was vested in the Commercial Bank at the time that Bickham, the president, proposed to make good the impairment of the capital stock of the bank by a donation, which was agreed to by resolution of the board of directors, and when he (Bickham) deposited that sum in the Bank of Angie to the credit of the Commercial Bank, and a deposit slip for the amount was issued by the former to the latter bank, and was accepted.
The resolution of the board of directors referred to, in accepting the donation from Bickham, provided “that this amount be paid in as required by law.” The bank examiner required that it be paid in cash. And this resolution shows that the Commercial Bank was a stranger to the oral agreement sworn to by the officers of the Bank of Angie which they said existed between them and Bickham.
If the depositors and stockholders of the Bank of Angie sustain loss, it is by reason of the fault and wrongdoings of those to whom they intrusted the management of their business ; and they must look to the makers of the notes whose notes were substituted for that of Bickham, when he borrowed the $11,-000 and had it placed to the credit of the Commercial Bank, on the books of the Bank of Angie.
It is ordered, adjudged, and decreed that the judgment appealed from be reversed, and that there be judgment in favor of I>. T. Cushing, special agent, liquidating the Commercial Bank of Bogalusa, La., and against petitioner, H. H. Kennedy, and intervener, X S. Brock, Jr., special agent, liquidating the Bank of Angie, rejecting their demands.
It is further ordered, adjudged, and decreed that the Commercial Bank of Bogalusa, in liquidation, is the owner, and as such entitled to the deposit, of $11,000, appearing on the books of the Bank of Angie, and that said Commercial Bank is entitled to demand and receive same from the Bank of Angie in due course of the liquidation of that bank, with costs in both courts.