FARMERS SAVINGS BANK OF NEW ALBIN, Appellee, v. E. H. BUNGE et al., Appellants.

No. 40021.

1358

June 23, 1930.

Rehearing Denied April 10, 1931.

Hurd, Lenehan, Smith & O'Connor and H. Haehlen, for appellants.

Duxbury & Duxbury, A. E. Sheridan, J. W. Dempsey, W. S. Hart, and Geiser & Donohue, for appellee.

Faville, J.—At all times mentioned herein, the appellants were stockholders in the appellee bank, and they, together with two other parties, constituted the board of directors of said bank. On the 11th day of December, 1923, the appellants, except the appellant Von der Ohe, had signed a written contract, jointly and severally guaranteeing the payment, on or before two years from said date, of certain bills receivable held by said bank. On November 14, 1924, the appellee bank was under examination, and a meeting of the board of directors was then held. All or a large portion of the bills receivable which had been guaranteed by the written instrument of December 11, 1923, still remained among the assets of said bank. The bank examiner making the examination insisted to said board of directors that some further and additional arrangement be made in regard to securing the payment of said assets of said bank, and insisted that, unless this was done, the bank would not be opened on the following day. After much discussion, it was finally arranged that the appellants, together with said two other directors, should execute their promissory notes to said bank in the total sum of $40,000, two of said notes to be for $10,000 each, and one for $20,000. It was also arranged at said time that an assessment of 20 per cent should be levied at said date upon all of the stock in said bank. Said assessment was so levied and paid into said bank, in the sum of $20,000. At said time there was also executed the following written instrument:

"Agreement.

"Whereas The Farmers Savings Bank of New Albin, Iowa, has recently been examined by the Banking Department of the State and it has been found by representatives of that Department that certain assets of the said Bank are of doubtful value and unfit for the said Bank to rely upon for the repayment of its depositors, and

"Whereas the said representatives of the Banking Department has requested that certain lines of credit set out in 'Exhibit A,' amounting to $40,013.00 attached hereto and forming a part of this contract, now carried in assets of this Bank, be charged off, and

"Whereas when said items set out in 'Exhibit A' are charged off, the capital of said Bank will appear to be impaired and the profit and loss account to be overdrawn:

"Now therefore, for the purpose of increasing the Profit and Loss account to meet said items when charged off and to prevent an impairment of the capital of the said Bank, we the undersigned stockholders of said Bank hereby agree to subscribe and pay into the said account of the Farmers Savings Bank of New Albin, Iowa, the sum of $40,013.00 subject to the final approval of the Superintendent of Bank.

"The said Farmers Savings Bank on its part agree to credit the amount so paid in to the Profit and Loss account on the books of said bank and to charge against said account the items set out in 'Exhibit A' in the amount of $40,013.00.

"It is further agreed by and between the said stockholders and said Bank that the funds so paid in may be used by the bank on the vote of Directors for the purpose of taking out of the assets of the said bank any doubtful or bad paper.

"And the said bank further agrees and binds itself under and by authority of action taken by its board of directors to reimburse the stockholders, subscribers hereto for the amounts paid in by them with interest at five per cent per annum, from time to time, in part or in whole, when and only when the earnings of said bank, over and above operating expenses, are sufficient to make such repayment. Such repayments may be made pro rata partial payments or in total by the direction of the Board of directors and with the approval of the State Banking Department. And it is understood and agreed that the stockholders, sub-

scribers, hereto, shall be reimbursed for the amount so paid in with interest, in full, before further dividends shall be declared or paid out of the undivided profits.

"It is further understood and agreed that the Board of Directors may at any time, with the approval and proper action of the Banking Department of the State levy an assessment or assessments against the Capital Stock of said Bank for the purpose of raising funds with which to reimburse the said stockholders, subscribers hereto, for the amount so paid in by them with interest and when such assessments are made, if made, the Farmers Savings Bank agrees to reimburse the said stockholders, subscribers hereto, out of the Funds derived from such assessment,—But it is distinctly understood that the Farmers Savings Bank of New Albin, Ia. is not in any way liable to said stockholders, subscribers hereto, for any amount except such as is derived from the profits of said bank and it is understood that such reimbursement, if made, shall not at any time impair the present capital and surplus of said Bank."

This instrument was signed by all of the appellants, the other two directors of said bank, and said bank through its cashier. Attached to said written instrument is a list of notes aggregating $40,013. A special meeting of the board of directors was held at said time, and the minutes of said meeting contained the following recital:

"Whereas this bank has been recently examined by the banking department, and certain assets of said bank have been objected to by examiners of said department, and whereas it is now deemed that, as an emergency exists, for the purpose of protecting depositors of said bank and eliminating the assets objected to, it is moved by William Schuldt and seconded by John Miles that the cashier be instructed to enter into a certain contract, copy of which is attached hereto and made a part hereof, whereby the signers of this agreement, as individuals, jointly and severally obligate themselves, with the understanding that part of this contract referring to assessment does not contemplate the elimination of their liability by the use of the assessment this day levied, but it is understood that any future assessment can be levied to liquidate the said liability, and the cashier is hereby authorized, empowered, and instructed to enter into this contract on behalf of this bank. So may it be. Carried."

Notes aggregating $40,000 were signed by the appellants and said two directors on said date, and were delivered to the cashier of said bank, who was one of the said board and also one of the signers of said notes. On November 29, 1924, said notes were placed in the assets of the appellee bank, and $73,000 of the assets of said bank were charged off. In their answer appellants admit signing the note in question, but deny that the same was legally delivered, and allege that the note was signed in connection with the contract referred to, and that the transaction was subject to the approval of the superintendent of banking, and allege that no such approval was ever given, and that the agreement was executory and without consideration, and that the contract was *ultra vires* and procured by fraud and misrepresentation. By reply, the appellee pleads estoppel, ratification, and waiver. Appellants attacked the reply by motion, which was overruled. The bank remained open and continued in business and was still operating at the time of the trial.

I. The case was set for trial at a certain date in September. A few days prior to the time so fixed, the appellants filed a substituted answer. Appellee filed reply on the day that the cause was reached for trial. Appellants did not ask for  a continuance, but requested that the trial be postponed, for the purpose of preparing a motion attacking said reply. The court granted leave to the appellants to file said motion, which was subsequently done, and ruled upon by the court. There was no reversible error shown at this point. A continuance was not asked, and there was no abuse of discretion on the part of the trial court in refusing to delay the trial for the purpose of permitting the appellants to file a motion attacking the reply, which motion the appellants did subsequently file, and which was ruled upon. See *Molyneux & Maher v. Julius*, 184 Iowa 816; *Anderson v. Royal Highlanders*, 195 Iowa 1252.

II. Appellants complain of the overruling of their objections to the testimony of a witness to the effect that one of the examiners said to the appellants, at the time of said transaction, that he would report the matter to the department, and "unless we [appellants] were definitely advised, we should include them [the notes] in the assets of the bank." There was no

error in admitting this evidence. It was part of the transaction that occurred at the time the notes and the agreement were signed, and was material and proper.

III. Appellants complain of the ruling of the court in admitting the testimony of the witness Colton as to the custom and usage of the banking department in approving such a contract and as to the meaning of certain initials  which were indorsed upon said contract. The objection is wholly without merit. The witness who made the indorsement of the initials identified the same, and testified as to the manner in which matters of that kind were handled in the office of the banking department. There could have been no prejudice at this point.

IV. Appellants complain of the cross-examination of a witness as to the value of certain life insurance policies which were held as collateral by the bank to some of the paper described in the list attached to the contract. There was no plea of payment or claim of offset, and counsel disclaimed any such in open court. While this evidence might properly have been excluded, it in no way could have been prejudicial to the appellants, and error cannot be predicated thereon.

V. Appellants also complain of testimony to the effect that the condition of the bank at the time of trial was substantially the same as it was on June 30, 1928. The date of June 30, 1928, had reference to the report of the examining committee of the bank made on said date and signed by some of the appellants. The evidence of the witness as to the condition of the bank on said two dates might well have been excluded, on the ground that it was immaterial; but no prejudice could have resulted to the appellants from its admission in evidence. There was, therefore, no reversible error at this point.

VI. The contract contains the following provision:

"It is further agreed by and between the said stockholders and said Bank that the funds so paid in may be used by the bank on the vote of Directors for the purpose of taking out of the assets of the said bank any doubtful or bad paper."

Appellants contend that, under this provision of the contract, there could be no liability upon their part upon the note

in suit unless it first be shown that the directors of the bank  voted to take out of the bank the assets listed in the contract. The undisputed evidence shows that all of the appellants were present at the meeting of the board of directors held at the same date that the contract and notes were executed, and participated in the special meeting of directors authorizing the execution of said contract. The notes were, in fact, placed in the assets of the bank on November 29, 1924, and thereafter reported to the banking department as assets of said bank. Before said notes were placed in the assets of the bank and the listed paper charged off, on November 19, 1924, the examiner wrote to the said board of directors as follows:

"Examination of your Bank has just been made, and a copy of the report inclosed herewith for your record. During this examination your Board of Directors placed their notes in the Bank for the $40,000.00 according to contract and resolution of which you have a record. This amount and the 100 per cent assessment which has been ordered to eliminate all that part of the Murphy paper which is regarded as certain loss, the items eliminated by Directors notes being listed as Exhibit A in the contract. * * * You are required within ten days to notify me over the signature of each member of the Board that this Report and letter has been reviewed by the Board, and that all matters generally and if request or requirement as listed under each name will have the attention as directed, * * *"

On December 1, 1924, the appellants each personally signed and sent to the said bank examiner their following reply:

"This is to advise that we are in receipt of your report on recent examination of this bank and that the various matters you pointed out to us therein are having our best attention."

Upon this entire record, there was nothing to submit to the jury on the question as to whether or not the directors of the bank duly accepted and acted upon the said contract and said notes as provided in said contract.

VII. Appellants earnestly contend that it was a question for the jury to determine whether there was any legal and effective delivery of the notes. Appellants invoke the familiar rule

 that parol evidence is admissible to prove non-delivery or a conditional delivery of a signed instrument. The rule has been recognized by us in *Transport Truck & Auto Co. v. Iowa Mut. Ins. Co.*, 197 Iowa 1297, and other similar cases. It is true that the notes, at the time of their execution, were placed in the hands of the cashier of the bank, who was one of the signers of said notes, and the same were not placed in the assets of the bank until some fifteen days later, to wit, on November 29, 1924. There is oral testimony on the part of two of the directors to the effect that there was talk, at the time, to the effect that there should be a meeting of the board of directors in the event that the notes were to be put into the assets of the bank. The notes and the contract were executed for the very purpose of keeping the bank from being closed the next day. The arrangement then made was approved by the banking department. On November 19, 1924, the appellants were notified by the examiner that the said notes had been placed in the bank and certain items eliminated. The appellants, over their own signatures, acknowledged said report and advised the banking department that the matter was receiving their attention. The notes were, in fact, placed in the assets of the bank on November 29, 1924. Upon this record, there could be no question to submit to a jury as to the fact of the execution and delivery of the contract and the note in suit to the appellee bank. The record does not bring the case within the purview of the cited cases permitting oral testimony to prove a delivery upon a condition. Appellants make no claim that they did not fully understand the recitals of the contract which they signed. The evidence does not bring the case within the rule of conditional delivery, nor did it present a question for the consideration of the jury at this point.

VIII. Appellants contend that there was no consideration for the execution of the note in suit; and that, in any event, under the evidence, the question of whether or not there was  consideration was for the determination of the jury. The written instrument imports a consideration. The appellants were all directors and stockholders in the bank. It is without dispute in the record that the note in suit and

the other notes executed contemporaneously therewith were executed by the appellants for the purpose of keeping the bank open and as a going concern, and for the purpose of substituting said notes as assets of the bank in lieu of certain described paper then in said bank. This arrangement was carried out. The appellants, sitting as a board of directors, authorized the execution of said contract in behalf of the bank, and contemporaneously therewith executed the note in suit. All of the appellants with the exception of Von der Ohe had previously guaranteed the payment of the same notes that were included in said list or paper. The record discloses that Von der Ohe was a substantial depositor in said bank, and was personally interested in preventing the closing of said bank at said time. The bank was kept open, and Von der Ohe later withdrew his deposit. It cannot be questioned that all the appellants, as directors and stockholders, had an interest in keeping said bank open and a going concern. By executing the notes in question they accomplished their purpose and prevented the closing of the bank at that time.

We have been cited to no case identical in its facts with the case at bar, but analogies may properly be drawn from a few cases involving the principle under consideration. In *Hope Mut. Life Ins. Co. v. Perkins,* 38 N. Y. 404, an insurance company possessed little or no available capital. It became necessary for it to acquire credit with the public. The defendant in the action executed and delivered his note to said company, for the purpose of enabling it to secure such credit. The court said:

"Again, the notes were given to give the company credit with the public, and thus induce individuals to insure with it. The presumption is that they were thus induced to insure. This was a sufficient consideration to sustain the contract of the makers of the notes."

So, in the case at bar, the notes of the appellants, as directors and stockholders, were given to the bank for the purpose of keeping the bank open and a going concern, and to give it credit with the public, and thus induce individuals to make deposits in said bank and to conduct business with it. The bank remained open for some time thereafter, and the presumption is that the public was induced to continue to do business because

said notes were given, and that the bank was kept open because of the fact that they had been so given. Under the doctrine of the cited case, this was a sufficient consideration to sustain the note.

*Dykman v. Keeney,* 10 App. Div. 610 (42 N. Y. Supp. 488), involved a case somewhat similar to the facts in the case at bar, where notes were given by the directors of a bank, to prevent the closing of said bank. The court said:

"While the question whether the capital was impaired at the time the notes were given was not determined, nor did the superintendent of the banking department make any requisition upon the directors to make good any specific deficiency, still the doubt existing on that question in the mind of the superintendent, arising out of the character of some of the debts and bills receivable due to the bank, and the interest of the directors in the continuance of the bank as a sound financial and business institution, constituted a sufficient consideration to support the notes of the defendants, given to make good any possible deficiency which did exist. These notes, therefore, became, upon their delivery, debts due to the bank."

In the case at bar, the bank examiner required from the directors the execution of the notes in question, to meet an apparent loss to the bank by virtue of the condition of certain specified notes, and said examiner was about to close said bank unless said deficiency in the assets of said bank was provided for. The New York court, under similar circumstances, said that the interest of the directors in the continuance of the bank as a sound financial and business institution constitutes a sufficient consideration to support the notes given to make good a possible deficiency. In the case at bar, the deficiency actually existed. The closing of the bank was imminent. The notes were given to make good the deficiency and to prevent the closing of the bank. The cited case was again before the New York court, and is reported in 16 App. Div. 131 (45 N. Y. Supp. 137), and was subsequently affirmed by the Court of Appeals in 160 N. Y. 677 (54 N. E. 1090).

In *Hurd v. Kelly,* 78 N. Y. 588, a somewhat similar question was involved. This was an action by the receiver of a bank against certain obligors on a bond. The consideration recited in the bond was that the bank, as requested by the obligors, should

continue its ordinary business until a certain date, and the further consideration was the mutual covenants of the bond. The obligors agreed to pay a specified sum. The assets of the bank had become impaired, and the bond was executed for the purpose of being exhibited to the banking department as an asset, so that the bank could pass examination and continue to do business. It was objected that the bond was without consideration, and the court held that the continuance of business by the bank and the incurring of the new obligations incident thereto was a good consideration for the bond.

*Union Bank of Brooklyn v. Sullivan*, 214 N. Y. 332 (108 N. E. 558), was a case where certain listed assets of a bank were determined to be worthless, and certain stockholders and directors gave a note to the bank to protect its credit and to prevent the charging off of said worthless paper against the surplus of said bank. The court said:

"I think there was evidence upon which the jury might have found that some benefit accrued to the defendants from the note in question, and that there was a sufficient consideration therefor * * *."

In the case at bar, there is no conflict in the evidence as to the consideration.

In the recent case of *Hills Sav. Bank v. Hirt*, 204 Iowa 940, we considered a case wherein certain directors and stockholders of a bank signed certain notes under a written contract. We said:

"The interest of a·stockholder in preserving the bank as a going concern and in preventing the impairment of its capital is sufficient consideration for a note given for said purpose, and to take the place of bills receivable charged off the books of the bank."

We quoted with approval from the opinion of the Court of Appeals of New York in *Union Bank of Brooklyn v. Sullivan*, 214 N. Y. 332 (108 N. E. 558), supra, and said:

"When we take into consideration the weakened condition of the bank, and the interest which appellant had as a stockholder in the bank's continuing to be a going concern, and in the two written instruments hereinbefore mentioned, it cannot be

claimed that there was no consideration for any of the notes upon which this action is founded.''

In *In re Estate of Prunty*, 201 Iowa 670, we said:

· ''It is urged in support of this contention that no consideration moved from the bank to Prunty. In the first place, this was not necessary * * *; and in the second place, the signers of the agreement were interested in keeping the bank open and making good the impairment of its capital. This was a sufficient consideration for their obligation, and inured to their benefit. *Interstate Tr. & Banking Co. v. Irwin*, 138 La. 325 (70 So. 313). The instrument is not one (except consequentially) to indemnify the depositors against loss. It is to indemnify the bank. The signers were interested in the bank and in its recuperation. Money paid on the obligation would become the property of the bank, whether they intended to make a donation or that the other stockholders should share in the benefit thereof or not; and necessarily the property in the obligation and the right to enforce its performance were in the bank. *Wright v. Gurley*, 133 La. 745 (63 So. 310); *Interstate Tr. & Banking Co. v. Irwin*, 138 La. 325 (70 So. 313). The signers were conducting a quasi public institution, under the supervision of the state banking department. Undoubtedly they published the required statements while they were in control, as their successors did after them. Those statements and their permission to continue in the operation of the bank and to receive money on deposit, as authorized by the state, were founded, in part at least, upon this agreement; and the indemnitors will not be permitted to deny its efficacy. *Kennedy v. Young*, 136 La. 674 (67 So. 547); *Pauly v. O'Brien*, 69 Fed. 460.''

See, also, *Andrew v. Farmers & Merch. State Bank*, 205 Iowa 712; and *Boyd v. Miller*, 210 Iowa 829.

While the cited cases differ somewhat in their facts from the case at bar, and while in some of the cases it appears that the worthless paper was turned over to the parties executing new obligations to the bank, instead of being merely charged off on the assets of the bank, this distinction, however, we think does not change the principle involved. The real consideration for the execution of the notes involved in this action was the maintaining of the bank as a going concern, giving it credit and

standing, keeping it open, and enabling it to continue to induce the public to do business with it, and permitting the appellants, if so advised, to withdraw their deposits from the bank, as well as the mutual promises in the written contract.

Under the entire record, and in view of the well established rules of law, we think it must be held that there was a consideration for the execution of the notes in suit, and that the case did not present a question for the determination of the jury as to the existence of such consideration.

IX. Appellants contend that there was fraud and misrepresentation which induced the execution of the note and contract. Appellants were not experienced bankers. They owned a comparatively small amount of the total stock of  the bank. They were not skilled business men. There is, however, no contention that they were not fully advised of the business in which they were engaged and of the responsibility which they incurred. It ·is contended, however, that, at the time of . the execution of the notes, they were told that the bank was not in danger; that the paper "looked pretty good;" that 50 per cent of it might be collected; that the earnings of the bank in the future could take care of the bad paper. It is also contended that it was represented to appellants that the bank had a good surplus, about $7,000 that could be used, and that the bank could easily work out the problem without using the notes which appellants signed. Appellants concede that the claimed fraud and misrepresentation consisted in part of expressions of opinion, that could not be the basis of a legal claim of fraud and misrepresentation.

Appellants rely upon our recent holding in *Commercial Sav. Bank v. Kietges*, 206 Iowa 90. We therein recognized the rule that the question of fraud and misrepresentation is generally one to be determined by the jury from all the circumstances as a question of fact, and not by the court, as one of law. But in the instant case, we fail to find that there was any false representation of an existing fact that could be made the basis of an avoidance of the note in controversy. The appellants knew that, if the notes were not signed, the bank could not open the following day. Undoubtedly, all parties entertained the hope, and perhaps the belief, that the bank could eventually "work out" with-

out resorting to final collection of the appellants' notes. But that appellants intended that the notes were to become assets of the bank and were to replace the bad paper which had been previously guaranteed, does not admit of question. The discussion as to the possibility of what might be realized from the paper charged off, or that reimbursement might possibly be made to appellants in the future, and other like matters, were not false statements regarding existing facts which would vitiate the note and contract.

We fail to find in the record any such evidence of fraud and misrepresentation as could carry that question to the jury.

The appellants executed the note and contract with a full understanding of the situation. All but one of them were already obligated on a contract of guaranty of the same paper which was charged off under the new arrangement then made. The appellants desired to keep the bank open, and this they accomplished. They later recognized the transaction as having been fully consummated.

Upon the entire record, we fail to find that appellants presented any issue of fact entitling them to go to the jury. The judgment must, therefore, be—*Affirmed.*

MORLING, C. J., and STEVENS, ALBERT, and WAGNER, JJ., concur.