STATE of Iowa, Appellee,

v.

Rosetta HARRIS, Appellant.

No. 55702.

Supreme Court of Iowa.

Oct. 16, 1974.

R. Fred Dumbaugh, Robert W. Matias, and Robert C. Gross, Cedar Rapids, for appellant.

Richard C. Turner, Atty. Gen., Raymond W. Sullins, Asst. Atty. Gen., and William G. Faches, Linn County Atty., for appellee.

Heard before MOORE, C. J., and REES, UHLENHOPP, HARRIS and McCORMICK, JJ.

UHLENHOPP, Justice.

This appeal involves the propriety of two rulings by the trial court during the trial of defendant Rosetta Harris on a murder charge.

Charles Frondle and defendant were in an apartment, where defendant resided with one Isaac Pledge. The State and defendant disagree about the circumstances leading up to the shooting involved but not about the shooting itself. As to the latter, defendant and the State agree that defendant shot Frondle in the back with a shotgun and that he died as a result.

The State claims and adduced proof that previous to the incident, Frondle and defendant met at a tavern, where they made arrangements to go to defendant's apartment; that they went to the apartment, leaving the tavern separately; and that in the apartment, defendant took Frondle's money and shot him.

Defendant contends and adduced proof that Frondle accosted her at the tavern, she left and went to her apartment, he followed and demanded sexual relations, she resisted, and they wrestled. Defendant further contends that she got a shotgun from the corner of the room and told Frondle to leave, which he refused to do. She then got a shell out of a drawer, loaded the gun, pointed it at Frondle, and again told him to leave. When Frondle went to the door and put his hand on the knob, she shot him in the back. Frondle staggered from the building to the street and died shortly thereafter. Defendant contends she shot Frondle because she thought he was going to lock the door and rape her.

The homicide occurred on December 3, 1971, and trial commenced on June 26, 1972. Throughout that period and to the present, defendant was vigorously represented by counsel.

Reception of evidence at trial took about two and one-half days, including defendant's self-defense evidence and approximately 20 minutes of rebuttal testimony. On adjournment on the second day, the court inquired of counsel as to when they expected to conclude introduction of evidence, and they stated they would finish prior to noon of the next day. The court then said that counsel could expect to argue the case in the afternoon of that next day. Actually, counsel concluded the evidence about 1:50 p. m. that next day, and the court had counsel commence the arguments about 50 minutes later. Prior to the arguments themselves, however, defendant objected to proceeding then and asked that arguments be made the following morning. The court overruled the objection and the attorneys argued the case to the jury.

The following morning the parties took exceptions to the court's jury instructions. Defendant excepted to the instructions on self-defense in a particular which we will later relate. The trial court then instructed the jury which, after deliberation, found defendant guilty of second-degree murder. The court later held a hearing to consider the appropriate sentence in light of the circumstances of the crime and of defendant's prior record, which consisted of burglary and misdemeanors—disorderly conduct, profanity, and littering streets with bottles. The court imposed a sentence of 40 years imprisonment, and defendant appealed.

In this court, defendant urges that (1) the trial court deprived her of effective assistance of counsel by refusing to delay commencement of jury arguments and (2) the court erred in its instructions on self-defense.

**I.** *Commencement of Jury Arguments.* While the judge presiding at a trial must not act arbitrarily, capriciously, or abusively, matters relating to the orderly conduct of the trial are committed to his discretion, including the schedule of events. As stated in 88 C.J.S. Trial § 36 at 91–93:

In general, all matters which relate to the orderly conduct of a trial, or are necessary to the proper administration of justice in a court, and which are not regulated by precise statute or rule, including such matters as the duration of a session of the court, the time of convening and adjournment, the length of any recess, and the submission of a cause to a jury, are within the discretion of the court. . . . The trial judge must be allowed a considerable latitude of discretion in conducting the trial; but such discretion is not arbitrary and must not be abused.

See also Schroedl v. McTague, 169 N.W.2d 860, 867 (Iowa) ("The presiding judge is not restricted to the functions of a mere umpire or referee in a contest between opposing parties or counsel. A trial court has the duty to control and conduct its court in an orderly, dignified and proper manner."); Neiderhiser v. Neiderhiser, 254 Iowa 791, 119 N.W.2d 245; Putnam v. Bussing, 221 Iowa 871, 879, 266 N.W. 559, 563 ("A large measure of discretion must be lodged in the trial court in dealing with matters of this kind [granting or refusing delay during trial], and before this court would be justified in interfering in such matters, there must be presented a clear case of abuse of discretion."); Miller v. Hurburgh, 212 Iowa 970, 235 N.W. 282; Farmers' Savings Bank v. Bunge, 211 Iowa 1357, 231 N.W. 651; 53 Am.Jur. Trial § 34 at 49–50. Considerations similar to those which determine whether a trial court has abused its discretion in refusing delay during trial are also relevant on whether a defendant has been thereby deprived of effective service by his counsel. See Orcutt v. State, 173 N.W.2d 66 (Iowa); State v. Massey, 207 N.W.2d 777 (Iowa).

■ In the present case, defendant's attorneys were not new to the litigation; they had been her counsel for several months. Their thorough preparation and presentation of the defense demonstrate that they were intimately familiar with the facts and knew exactly where they were headed in the trial. The facts were not complicated like those in an accounting case, for example, where preparation of argument may require considerable time. Moreover, the real issue in the case was self-defense, and defendant and her attorneys were in possession of most of the evidence on that subject. Defense counsel did not have to argue to the jury first; this fell to the prosecutor, on whom rested the burden on all issues. On the preceding day, the trial court alerted counsel that the arguments would be made the next afternoon. Under all the circumstances, the trial court acted well within its discretion in the conduct of the trial when it overruled defendant's request for delay. The court did not deprive defendant of effective use of her counsel.

We hold that defendant's first contention is not meritorious.

II. *Instructions on Self-Defense.* We have some misgivings as to whether substantial evidence appears on all of the four elements of self-defense. See State v. Haffa, 246 Iowa 1275, 71 N.W.2d 35. But the State does not raise this question and so we do not linger on the issue.

The trial court gave the self-defense instructions which are found in II Iowa Uniform Jury Instructions, Nos. 513.20 et seq. (1970). These instructions state that before a person may take another's life in self-defense, the person must believe he is in imminent danger of "death or great bodily harm." Defendant excepted and contended that the trial court should add to the words "death or great bodily harm" the words "or some felony about to be committed against the defendant." The court overruled the exception. Did the court commit reversible error in failing to include the requested words?

This court does not appear to have dealt at length with the question of homicide to prevent the commission of felony, although see State v. Kennedy, 20 Iowa 569, and State v. Thompson, 9 Iowa 188. In the

self-defense cases, the court has sometimes used the trial court's expression, "death or great bodily harm," but on other occasions has added the words, "or the commission of a felony." Compare State v. Badgett, 167 N.W.2d 680 (Iowa); State v. Parker, 261 Iowa 88, 151 N.W.2d 505; and State v. Norton, 227 Iowa 13, 286 N.W. 476, with State v. Broten, 176 N.W.2d 827 (Iowa); State v. McNamara, 252 Iowa 19, 104 N.W.2d 568; and State v. Haffa, 246 Iowa 1275, 71 N.W.2d 35.

■ Essentially, two situations are involved in this area of homicide. One situation involves the defense of one's own person from attack, self-defense. The law's respect for human life is such that the attacker's life may not be taken unless the victim reasonably and honestly believes he is in imminent danger of loss of life or great bodily injury, quite apart from the question of whether the conduct of the other person is felonious. If the victim reasonably and honestly believes he is in such danger, then he may kill; but if he does not reasonably and honestly so believe, he may not lawfully kill in self-defense although the conduct of the other may be felonious. Thus the test in self-defense cases, as stated by the trial court and in the uniform instructions, is not whether the victim is endeavoring to prevent the commission of a felony but whether he believes he is in danger of loss of life or great bodily injury. 1 Wharton, Criminal Law & Procedure, § 214 at 466–467 (12th ed.) ("To give rise to the right of self-defense, the defendant must act under a reasonable belief that he is in immediate or imminent danger of losing his life or receiving serious bodily harm."); 40 Am.Jur.2d Homicide § 151 at 439–440 ("In order successfully to assert self-defense as an excuse or justification for a homicide, the defendant must have been in imminent danger of death or great bodily harm at the time of committing the homicidal act, or must have had reasonable grounds for believing and did in good faith believe that he was in such peril and that the killing was necessaary to avert such peril"). See approved instruction in State v. Parker, 261 Iowa 88, 151 N.W.2d 505; and see also People v. Jones, 191 Cal.App.2d 478, 12 Cal.Rptr. 777; State v. Burns, 516 P.2d 748 (Or.App.); State v. Hansen, 3 Or. App. 378, 474 P.2d 17; State v. Nyland, 47 Wash.2d 240, 287 P.2d 345.

■ In the other situation, a person may kill if he observes an atrocious, violent felony about to be or being committed— whether upon such person himself or not. From earliest common law, the person may take the life of the offender if necessary to prevent such a crime. IV Blackstone, Commentaries, 180 (18th ed.) ("such homicide as is committed for the *prevention* of any forcible and atrocious *crime*, is justifiable by the law of nature; and also by the law of England, as it stood so early as the time of Bracton"). The commentators generally treat this type of homicide separately from self-defense. E. g., Blackstone, supra, at 180, 181 (classifies homicide to prevent felony as justifiable and homicide in self-defense as excusable); 1 Wharton, supra, § 206 (preventing felony), § 213 et seq. (self-defense); 40 Am.Jur.2d Homicide §§ 121, 122 (prevention of felony), §§ 139, 140 (self-defense). The law's rationale for allowing human life to be taken to prevent commission of atrocious, violent felonies is that such crimes themselves imperil human life or involve danger of great bodily harm. United States v. Gilliam, 25 F.Cas. 1319, 1320 (No. 15,205a) (justifiable homicide of one who endeavors to commit a felony such as "murder, robbery, rape, arson or burglary. . . . In all these felonies, from their atrocity and violence, *human life either is, or is presumed to be in peril*"—italics added); State v. Burns, 516 P.2d 748, 752 (Or.App.) ("phrases requiring that there be a 'felony involving the use or threatened imminent use of physical force against a person,' 'unlawful deadly physical force,' or a 'felony by force and violence' *are the functional equivalents of the case law's requirement of 'great bodily harm'*"—italics added). See also State v. Thompson, 9 Iowa

188. Thus the foundation in both the self-defense and the prevention of felony cases is the same—the necessity of taking a life in order to save another one or to prevent great bodily harm.

From this it is clear that not every felony will permit the taking of human life. The elements of force and atrocity must exist. 40 Am.Jur.2d Homicide § 121 at 413 ("forcible and atrocious"); 40 C.J.S. Homicide § 101 at 960. Blackstone lists those felonies as murder, robbery, burglary, arson, breaking a house with intent to rob, rape, and other forcible and detestable capital crimes. Blackstone, supra, at 181. Adultery, as an example, is not within that class of felonies. State v. Nyland, 47 Wash.2d 240, 287 P.2d 345.

The result is that when a trial judge instructs on the necessity of imminent danger of loss of life or great bodily harm, he covers the foundation of both the doctrines of self-defense and prevention of felony. He has the duty to instruct on his own initiative on the material issues. Rule 196, Rules of Civil Procedure. In a self-defense case, a trial judge discharges that duty when he instructs as the trial judge did here. State v. Parker, 261 Iowa 88, 151 N.W.2d 505. There remains, however, his duty to amplify on proper request.

Thus we come to defendant's exception. We assume arguendo that substantial evidence shows defendant was in imminent danger of great bodily harm from rape. Defendant would have had the trial court add to the instructions that defendant could kill if she was in danger of "some felony" about to be committed against her. This request, as framed, was too broad since not every felony justifies taking human life. Had defendant requested that under the law defendant could kill if she was in imminent danger of great bodily injury and *that rape constitutes great bodily injury,* or simply that defendant could kill *if she was in imminent danger of rape,* the request would have been good. State v. Martinez, 30 N.M. 178, 230 P. 379.

Did the requested instruction, though overbroad, require the trial court to go forward itself and prepare a proper amplifying instruction? As to sufficiently alerting a trial court, see State v. Hraha, 193 N.W.2d 484 (Iowa); Madison Silos, Division of Martin Marietta Corp. v. Wassom, 215 N.W.2d 494 (Iowa). We have examined the reporter's transcript to learn what defense counsel stated when they took their exceptions. At no point did they suggest that the instructions should be amplified to state that rape would constitute great bodily harm or that defendant could kill to prevent rape. Rather, for reasons of their own, they insisted that the jury be instructed in language like that in their overbroad request. That is the language they desired, but they were not entitled to it. Their desired language does not at all parallel the request made to the trial court in State v. Martinez, supra.

Under these circumstances, we hold that defendant's second contention in the appeal is not well taken.

We find no error.

Affirmed.