# IN THE COURT OF APPEALS OF IOWA

No. 19-1394
Filed November 4, 2020

IN THE MATTER OF THE ESTATE OF ROSALYN J. SCHAUL, Deceased.

**MARK SCHAUL, JOAN CLARK, DALE SCHAUL, and MARY ANN KNABENBAUER,**
Plaintiffs-Appellees/Cross-Appellants,

**and**

**JANET GLYNN,**
Plaintiff-Appellee,

**vs.**

**DENNIS SCHAUL, Individually and as executor, and DEAN SCHAUL,**
Defendants-Appellants/Cross-Appellees.

_____

Appeal from the Iowa District Court for Delaware County, Thomas A. Bitter, Judge.

Defendants appeal from the jury verdict finding in favor of plaintiffs on their will contest and claim of intentional interference with inheritance and the court order granting plaintiffs additur or new trial. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED ON APPEAL; AFFIRMED ON CROSS-APPEAL.**

David J. Dutton and Nathan J. Schroeder of Dutton, Daniel, Hines, Kalkhoff, Cook & Swanson, P.L.C., Waterloo, for appellants.

William S. Vernon and Robert S. Hatala of Simmons Perrine Moyer Bergman, PLC, Cedar Rapids, for appellee Janet Glynn.

Matthew D. Gardner of Gardner Law Firm, P.C., Urbandale, for appellees Mark Schaul, Joan Clark, Dale Schaul, and Mary Ann Knabenbauer.

Heard by Doyle, P.J., and Tabor and Ahlers, JJ.

**AHLERS, Judge.**

This case involves a dispute between seven siblings regarding the estate of their mother, Rosalyn Schaul. The siblings are aligned such that the five middle children sued the oldest and youngest of the siblings. The five middle children— plaintiffs Mark Schaul, Joan Clark, Dale Schaul, Mary Ann Knabenbauer, and Janet Glynn[1] (Plaintiffs)—brought suit challenging their mother's will that favored the oldest and youngest of the siblings, respectively, defendants Dennis and Dean Schaul (Defendants).[2] The Plaintiffs also asserted a claim for intentional interference with inheritance.

Following a jury trial, the jury returned a verdict in favor of the Plaintiffs both on their will contest and their claim of intentional interference with inheritance. The jury awarded no damages on the intentional-interference-with-inheritance claim, but the district court ordered an additur or new trial on the issue of damages.

The Defendants appeal, claiming the jury instructions were erroneous, the trial proceedings were unfair, evidence was insufficient to support the verdict, evidence in the form of a memo by a former attorney was improperly admitted, and attorney fees should not have been awarded.[3]

---

[1] Mark, Joan, Dale, and Mary Ann began this action by filing a petition naming themselves as plaintiffs, Dennis and Dean as defendants, and Janet as an "other defendant." Janet later joined Mark, Joan, Dale, and Mary Ann as plaintiffs. Janet retained separate counsel throughout the district court and appellate proceedings.

[2] The seven named parties are the adult children of Ambrose and Rosalyn Schaul. When necessary, we will refer to the family members by their first names.

[3] The Plaintiffs also filed a cross-appeal. Janet voluntarily dismissed her cross-appeal, and the remaining Plaintiffs do not make any arguments or identify any issues for cross-appeal. We find the cross-appeal waived. *See* Iowa R. App. P. 6.903(5) (requiring the cross-appellant to file a brief "address[ing] the issues raised in the cross-appeal").

## I.      Background Facts and Proceedings.

Ambrose and Rosalyn Schaul married in 1941 and soon purchased a 240-acre farm near Manchester.  Their marriage produced seven children: from oldest to youngest, Dennis, Janet, Dale, Mary Ann, Mark, Joan, and Dean.

In 1994, Rosalyn executed a will that left her estate to the children in equal shares if Ambrose did not survive her.  In 2005, Rosalyn executed a new will.  Under the 2005 will, if Ambrose did not survive her, the Defendants had an option to purchase the farm for $240,000.00 with the remaining assets divided evenly between the Plaintiffs; or if the Defendants did not exercise this option, the entire estate was to be divided evenly among the seven children.  On March 23, 2009, Rosalyn executed a new will that divided her entire estate equally among her children if Ambrose did not survive her.  On June 30, 2009, Ambrose passed away.  On April 6, 2012, Rosalyn executed yet another new will revoking all prior wills and, this time, leaving her "tangible personal property" to the Plaintiffs in equal shares and the residue—notably the farm—to the Defendants in equal shares.

On January 29, 2017, Rosalyn passed away.  Dennis sought to probate her estate under the 2012 will as an executor named in the will.  Mark, Joan, Dale, and Mary Ann filed a petition seeking to set aside the 2012 will due to undue influence and lack of testamentary capacity and claiming the Defendants intentionally interfered with their inheritance.  Although initially brought into the suit designated as an "other defendant," Janet joined the other Plaintiffs in making the same claims against Dennis and Dean.  The matter proceeded to jury trial.  The jury determined the 2012 will should be set aside, finding Rosalyn lacked the mental ability to make the will and the will was the result of undue influence by the Defendants.  The jury

also found Dennis, but not Dean, interfered with the inheritance for all five Plaintiffs but awarded no damages.

The Defendants filed a motion seeking judgment notwithstanding the verdict or new trial, and the Plaintiffs filed motions seeking an additur or new trial plus attorney fees. Ruling on post-trial motions, the district court concluded "[w]ithout any doubt" the jury's award of no damages on the intentional-interference-with-inheritance claim was because the jury "simply wanted to restore the siblings to a one-seventh position" that they would have had under their mother's most recent prior will, which the jury presumably believed would occur based on its verdict on the will contest count. Due to the fact the siblings had not agreed to proceed under their mother's most recent prior will, the district court ordered an additur to each of the Plaintiffs equal to the amount each would have received under their mother's most recent prior will–$319,860.88—with the judgment to be reduced by any amounts each Plaintiff receives under their mother's most recent prior will if the Defendants agree to probate that will. The court also awarded attorney fees in the amount of $146,025.32 and costs of $3233.94 to Janet, and attorney fees of $86,838.27 and costs of $7603.77 to the remaining Plaintiffs. The Defendants appeal.

## II.     Standard of Review.

We review an action to set aside a will for correction of errors at law. *In re Estate of Bayer*, 574 N.W.2d 667, 670 (Iowa 1998). We review matters of trial administration within the court's discretion for abuse of that discretion. *Weyerhauser Co v. Thermogas Co.*, 620 N.W.2d 819, 823 (Iowa 2000). While we normally review the admissibility of evidence for abuse of discretion, we review

hearsay rulings for correction of errors at law. *GE Money Bank v. Morales*, 773 N.W.2d 533, 536 (Iowa 2009). We review an award of attorney fees for abuse of discretion. *Landals v. George A. Rolfes Co.*, 454 N.W.2d 891, 897 (Iowa 1990).

We will affirm the denial of a motion for judgment notwithstanding the verdict "if there is substantial evidence to support the claim." *Bayer*, 574 N.W.2d at 670. "Evidence is substantial when a reasonable mind would accept it as adequate to reach a conclusion." *Id.* (quoting *Johnson v. Dodgen*, 451 N.W.2d 168, 171 (Iowa 1990)). "Evidence is not insubstantial simply because it may support contrary inferences." *Id.*

### III. Intentional Interference with Inheritance—Jury Instruction.

"We review jury instructions to decide if they are a correct statement of the law and are supported by substantial evidence." *Bride v. Heckart*, 556 N.W.2d 449, 452 (Iowa 1996). The defendants claim error in Instruction No. 19, which stated the Plaintiffs must prove all of the following elements to prevail on their claim of intentional interference with inheritance:

> 1. Plaintiffs were to inherit under a prior Will of Rosalyn Schaul;
> 2. Defendants acting in concert or individually knew of Rosalyn Schaul's prior Will;
> 3. Defendants acting individually or in concert intentionally and improperly interfered with Plaintiffs' inheritance in one or more of the following wrongful means:
>     a. coercing Rosalyn to change her Will;
>     b. causing Rosalyn to change her Will through duress;
>     c. using deceit to change Rosalyn's Will;
>     d. misusing confidential information to change Rosalyn's Will;
> 4. There was a reasonable certainty that Plaintiffs would have received an inheritance but for the interference; and
> 5. The interference was a cause of harm or damages to one or more of the Plaintiffs.

### A. Statement of Law.

Iowa recognized the tort of intentional interference with inheritance in *Frohwein v. Haesemeyer*, 264 N.W.2d 792, 795 (Iowa 1978), *overruled in part by Youngblut v. Youngblut*, 945 N.W.2d 25, 37 (Iowa 2020). Our supreme court later clarified the application of the tort in *Huffey v. Lea*, 491 N.W.2d 518, 520 (Iowa 1992), *overruled in part by Youngblut*, 945 N.W.2d at 37. In doing so, the court approved language from the Restatement (Second) of Torts § 774B (Am. Law Inst. 1979). Recently, the supreme court questioned the continuing viability of intentional interference with inheritance as a recognized tort. *See Youngblut*, 945 N.W.2d at 32–35 (collecting cases that reject the tort and commentaries that criticize the tort). However, the court declined the appellant's invitation to entirely disallow the tort, instead overruling *Frohwein* and *Huffey* only to the extent they allow an intentional-interference-with-inheritance claim to be brought separately from a will contest. *Id.* at 37. The court emphasized an intentional-interference-with-inheritance claim "has value in circumstances when a probate proceeding cannot provide an adequate remedy." *Id.* at 35.

When the supreme court adopted language from the Restatement, it described intentional interference with inheritance as occurring when "[o]ne who by fraud or other tortious means intentionally prevents another from receiving from a third person an inheritance." *Huffey*, 491 N.W.2d at 520 (quoting Restatement (Second) of Torts § 774B). The Defendants point to the use of "other tortious means" in this description. The Restatement provides the following comment on this language:

> Unlike the liability stated in § 766B [(Intentional Interference with Prospective Contractual Relation)], the liability stated in this Section is limited to cases in which the actor has interfered with the inheritance or gift by means that are independently tortious in character. The usual case is that in which the third person has been induced to make or not to make a bequest or a gift by fraud, duress, defamation or tortious abuse of fiduciary duty, or has forged, altered or suppressed a will or a document making a gift. In the absence of conduct independently tortious, the cases to date have not imposed liability under the rule stated in this Section. Thus one who by legitimate means merely persuades a person to disinherit a child and to leave the estate to the persuader instead is not liable to the child.

Restatement (Second) of Torts § 774B cmt. c.

The Defendants argue this language requires the Plaintiffs to prove they committed an "independently tortious" act as part of the elements for their intentional-interference-with-inheritance claim. According to the Defendants, this requirement is not contained in the jury instructions. We agree that, as stated in *Huffey*, the Plaintiffs must show the Defendants engaged in "fraud or other tortious means." 491 N.W.2d at 520 (quoting Restatement (Second) of Torts § 774B). However, we disagree that this requirement was not included in the instructions. This requirement is reflected in element three of Instruction No. 19, which required the Plaintiffs to prove the Defendants acted "in one or more of the following wrongful means:" fraud, duress, coercion, or misusing confidential information. While the Restatement (Second) of Torts section 774B notes "[t]he usual case" involves a tortfeasor who has committed "fraud, duress, defamation or tortious abuse of fiduciary duty, or has forged, altered or suppressed a will," neither the Restatement nor Iowa precedent requires a tortfeasor to commit one of these enumerated acts for liability to attach. We find Instruction No. 19 accurately

presented a jury question as to whether the Defendants engaged in the required tortious means, and we find no misstatement of law.

## B. Sufficient Evidence.

Instruction No. 19 required the Plaintiffs to prove one or both Defendants engaged in at least one of the specified wrongful means: fraud,[4] duress,[5] coercion,[6] or misusing confidential information. The Defendants claim there was insufficient evidence to submit any of these theories of wrongful acts to the jury.

### 1. Fraud, Duress, and Coercion

With regard to the alleged wrongful means of fraud, duress, and coercion, the lengthy trial record contains ample evidence supporting those theories of wrongdoing. The witnesses testified to Rosalyn's severe mental decline due to Alzheimer's disease. For example, Joan testified Rosalyn was mostly unable to carry a conversation after Ambrose died in 2009. Medical records submitted into evidence supported the witnesses' observations of Rosalyn's condition. After reviewing some of these records, David Tracey—Rosalyn's longtime attorney—wrote a letter on December 28, 2010, stating he did "not feel [Rosalyn] is able to competently sign a new will."

Nevertheless, the witnesses described Dennis making numerous attempts over the years to convince his parents to leave the farm to the Defendants. Mark

---

[4] The jury instructions defined "coercion" as "compulsion, constraint, compelling by force of arms or threat, or pressure by which the testator's action is restrained against her free will in the execution of her Will."

[5] The jury instructions defined "duress" as "subjecting a person to improper pressure which overcomes his or her will and coerces him or her to comply with demands to which he or she would not yield if acting as a free agent."

[6] The jury instructions defined "deceit" as "the act of representing as true what is known to be false; deceiving or lying, a dishonest action or trick, fraud or lie."

testified to a 2005 family meeting when Dennis "was dictating to [the parents] how he thought things should be handled" and Ambrose "stated clearly" the parents would not leave the farm to the Defendants. This meeting led to the 2005 will that provided an option for the Defendants to purchase the farm. According to a March 23, 2009 memo attorney Tracey prepared, the Defendants met with Tracey alone and told Tracey the parents wanted new wills that left the farm to the Defendants. When Tracey presented the new wills to the parents, they rejected the wills and directed Tracey to prepare the 2009 wills that left their estate to the children in equal shares. On March 16, 2012, Tracey sent a letter to Dennis stating Rosalyn declared "she definitely was not going to change her will" and requesting that Dennis "and Dean cease and desist trying to talk her into changing it." Dennis acknowledged he contacted another attorney, rather than Rosalyn's longtime attorney (Tracey), to arrange for the drafting and execution of the 2012 will that left the farm to the Defendants. Dennis also acknowledged he did not involve the Plaintiffs in drafting this will, he did not inform this other lawyer of his parents' prior refusal to leave the farm to the Plaintiffs, and he personally paid the other attorney for the will.[7] Joan testified she only learned about the 2012 will in 2014 after Dennis told her, "If [the Plaintiffs] think they're going to get one-seventh [of the estate], they've got another thing coming, I've got it all taken care of." She further testified the Plaintiffs then obtained a conservatorship for Rosalyn, with Joan and Mark

---

[7] Besides calling into question on whose behalf the new attorney was working, the direct payment by Dennis from his own funds was sneaky in the sense that his payment bypassed the usual procedure for paying Rosalyn's bills. The usual procedure for paying Rosalyn's bills was to run them through Joan, who paid them on Rosalyn's behalf.

serving as co-conservators, "to protect [Rosalyn] and her assets." This evidence is sufficient to prove the Defendants engaged in fraud, duress, and coercion in procuring the 2012 will. We find no error in the jury instructions with regard to these three theories of wrongful conduct.

## 2.    Misuse of Confidential Information

The submission of the theory of misuse of confidential information is more problematic. To begin, the parties raise an issue over whether misuse of confidential information is a viable theory of recovery within the context of a claim for intentional interference with inheritance. The Defendants argue misuse of confidential information applies only in the context of claims for interference with prospective business advantage, where confidential information includes trade secrets, customer lists, or other proprietary business information. The Defendants argue misuse of confidential information has no place in the context of an intentional-interference-with-inheritance claim.

In contrast, the Plaintiffs argue that the tort of intentional interference with inheritance is based on the tort of intentional interference with prospective business advantage. They argue intentional-interference-with-prospective-business-advantage claims recognize misuse of confidential information as a viable theory for committing that tort, so the same should apply regarding intentional interference with inheritance.

We need not decide whether misuse of confidential information is a viable theory for committing the tort of intentional interference with inheritance. For the sake of argument, we will assume it applies. Even with that assumption, however, there was insufficient evidence supporting that theory of committing the tort. While

there is ample evidence of various forms of skullduggery and other wrongful conduct engaged in by the Defendants, including attempting to trick attorney Tracey into divulging the distribution scheme of Rosalyn's 2009 will, there was insufficient evidence that the information obtained was confidential and was misused. This problem is exacerbated by the fact that none of the parties submitted proposed instructions, and the district court gave no instructions, defining "confidential information" or explaining what constituted "misuse" of the information.[8] With no jury instructions explaining the scope and meaning, the jury was left to speculate as to what information was confidential and whether it was misused. Like the jury, we too are left to speculate what those terms mean in the context of this suit. The Plaintiffs claim the confidential information received by the Defendants that forms the basis for this theory of recovery was the information supplied by attorney Tracey about the distribution scheme of Rosalyn's 2009 will. However, the evidence showed that one or more of the Plaintiffs already had that information, which calls into question whether there was sufficient evidence that it was confidential. Furthermore, even if we assume the information was confidential, there is insufficient evidence that it was "misused." The fact that obtaining the information about the distribution scheme of Rosalyn's 2009 will may have been the motivating force that compelled the Plaintiffs to spring back into action to try to get Rosalyn to change her will is not misuse of the underlying information itself. Perhaps if the jury instructions had included some parameters

---

[8] In contrast, as previously noted, the jury was instructed about the scope and meaning of the other three theories of committing the tort, even though those three theories may have been more easily understood by a lay person than "misusing confidential information."

of what the terms "confidential information" and "misuse" mean, we could be persuaded there was sufficient evidence supporting this theory of recovery. However, given the fact that the jury was given no guidance as to the scope and meaning of those terms, we cannot say there was sufficient evidence to support this theory of recovery. Therefore, misuse of confidential information should not have been submitted as a theory of how the Defendants committed the tort of intentional interference with inheritance.

Having determined that it was error to submit misuse of confidential information as a theory of commission of the tort at hand, we must now determine the remedy. In making that determination we note that, in spite of a request by the Plaintiffs for a special jury verdict question to state whether the jury based its decision on the misuse-of-confidential-information theory, no such special verdict was submitted to the jury. Instead, the verdict forms only called for the jury to make a finding in favor of one party over the other, making it a general verdict. *See Clinton Physical Therapy Servs., P.C. v. John Deere Health Care, Inc.*, 714 N.W.2d 603, 610 (Iowa 2006) (defining a general verdict as "a verdict in which the jury only makes a finding in favor of one party over the other party"). Due to a general verdict being used, we have no way of knowing which theory the jury relied upon in finding in favor of the Plaintiffs in their claim for intentional interference with inheritance. Since one of the theories submitted was submitted in error, the Defendants are entitled to a new trial on this claim. *See Erickson v. Wright Welding Supply, Inc.*, 485 N.W.2d 82, 86 (Iowa 1992) ("In civil cases, 'when a trial court errs in submitting even one of several theories of recovery and the jury returns only a

general verdict for the plaintiff the verdict cannot stand and the defendant is entitled to a new trial.'" (quoting *Gordon v. Noel*, 356 N.W.2d 559, 565 (Iowa 1984))).

## IV.     Participation by Both Plaintiffs' Attorneys.

As previously noted, four of the Plaintiffs were represented by one attorney, and Janet, the remaining Plaintiff, hired her own attorney. Before the start of trial, the Defendants sought to prevent the Plaintiffs' attorneys from separately participating in each phase of the trial, arguing the Plaintiffs should have to choose which of their attorneys would handle each phase but be limited to only one. The district court denied the Defendants' request but permitted the Defendants to make a standing objection to the separate participation of both counsel throughout the trial. The Defendants raised this issue again in a motion for mistrial and their motion for new trial, both of which were denied.

Trial judges have a great deal of discretion in "all matters which relate to the orderly conduct of trial, or are necessary to the proper administration of justice in a court, and which are not regulated by precise statute or rule." *State v. Harris*, 222 N.W.2d 462, 464–65 (Iowa 1974) (quoting 88 C.J.S. *Trial* § 36 at 91–93). "When the motion and the ruling are based on discretionary grounds, we review the district court's ruling for an abuse of discretion." *Weyerhauser*, 620 N.W.2d at 823. "An abuse of discretion occurs when 'the court exercise[s] [its] discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable.'" *Eisenhauer ex rel. T.D. v. Henry Cnty. Health Ctr.*, 935 N.W.2d 1, 9 (Iowa 2019) (quoting *Graber v. City of Ankeny*, 616 N.W.2d 633, 638 (Iowa 2000)). "Grounds or reasons are clearly untenable if they are not supported by substantial evidence or if they are based on an erroneous application of law." *Id.*

The Defendants argue the district court's decision to allow counsel for both groups of Plaintiffs to participate in the trial was prejudicial because counsels' "duplicative" opening and closing arguments "gave [the Plaintiffs] two bites at the same apple and diluted any burden of proof" the Plaintiffs had at trial. The Defendants further maintain that they were similarly harmed by the district court's decision to allow both counsel to examine witnesses.

We first note that the Defendants do not cite—nor can we find—any authority supporting the position that it is an abuse of discretion for the district court to permit two attorneys representing separate plaintiffs to give opening and closing arguments and to separately examine and cross-examine witnesses. The reasons separate parties are not required to have only one co-party's attorney perform a specific part of the trial are apparent. Such a rule would require one party's counsel to essentially litigate a co-party's claims, despite the fact that attorney does not represent the co-party, and would significantly harm an attorney's ability to effectively represent the attorney's own client's interests and to develop trial strategy. In this very case, the two groups of counsel engaged different expert witnesses and took different positions on several issues. Furthermore, even if the Defendants' request had been granted, it would have most likely just resulted in one attorney whispering with the other attorney during each phase of the trial (e.g., to make sure no more questions should be asked of prospective jurors, whether additional questions should be asked of a witness, etc.), which would have been just as time-consuming and disruptive, if not more so, than simply permitting the second attorney to act independently. If there were concerns about duplication of questions or creating confusion for witnesses, none of which concerns were raised

here, those concerns could be addressed by specific objections during trial. While we are not saying the district court was required to rule as it did, we find no abuse of discretion in the district court's decision to permit both attorneys representing the separate Plaintiffs from fully participating in the trial.

The Defendants further claim the district court's ruling denied them their right to cross-examine witnesses and that having multiple attorneys ask questions "gave the jury the impression that [the Plaintiffs'] case was insurmountable" and "effectively eliminated [the Plaintiffs'] burden of proof." This argument is similarly unpersuasive. The district court was confronted with a situation where co-parties had similar causes of action and at times relied on the same witnesses, but ultimately did not have precisely the same claims. The court thus permitted counsel for both groups of Plaintiffs to give arguments and examine and cross-examine witnesses, but the court admonished counsel against duplicative questioning. The Defendants do not cite any instances where the counsel asked witnesses questions the co-party's counsel had already asked, and they do not explain how permitting both attorneys to ask witnesses questions denied them the ability to cross-examine witnesses or otherwise shifted the Plaintiffs' burdens of proof at trial. We cannot say the district court abused its discretion based on these facts.

## V. Will Contest.

The jury set aside the 2012 will because it found Rosalyn lacked the mental ability to make the will and the will was the result of undue influence. The Defendants argue these findings lack substantial evidentiary support.

Instruction No. 13 stated Rosalyn had the mental ability required to make the 2012 will if, at the time she made the will, she:

> 1. Knows a will is being made.
> 2. Knows the kind and extent of her property.
> 3. Is able to identify and remember those persons she would naturally give her property to.
> 4. Knows how she wants to distribute her property.

Instruction No. 15 set forth the elements of undue influence:

> 1. At the time the Will was made, Rosalyn Schaul was susceptible to undue influence.
> 2. Dennis Schaul and/or Dean Schaul had the opportunity to exercise such influence and carry out the wrongful purpose.
> 3. Dennis Schaul and/or Dean Schaul was inclined to influence Rosalyn Schaul unduly for the purpose of getting an improper favor.
> 4. The result was clearly brought about by undue influence.

As explained above in section III.B, evidence in the record—including witness testimony and medical records—thoroughly described Rosalyn's diminished mental state at the time she signed the 2012 will. This evidence also showed the Defendants had the opportunity and inclination to unduly influence Rosalyn when they arranged for a new attorney to draft and execute the 2012 will.

Nevertheless, the Defendants argue the Plaintiffs failed to meet their high burden to prove lack of mental ability and undue influence. *See Bayer*, 574 N.W.2d at 671 ("For influence to be considered undue, it must be the 'equivalent to moral coercion.'" (quoting *Estate of Hollis*, 12 NW.2d 576, 581 (Iowa 1944)); *Gillette v. Cable*, 79 N.W.2d 195, 199 (Iowa 1956) ("[T]he law is slow to deny the right of any person to dispose of [her] property by will as [she] sees fit. No mere impairment of [her] mental or physical powers is enough so long as [she] retains mind and comprehension sufficient to meet the tests we have itemized."). The Defendants

assert Rosalyn's mental ability, while diminished, was sufficient to execute a will in 2012. They point to evidence in the record, including testimony from the attorney who prepared and oversaw the execution of the 2012 will and witnesses to that execution who did not have concerns about Rosalyn's mental state when she signed the will. This contradictory evidence merely presents a question for the jury. *See Bayer*, 574 N.W.2d at 670–71 ("In a will contest, weight and credibility of the evidence are questions for a jury."). We find substantial evidence to support the jury verdict setting aside the will due to lack of mental ability and undue influence.

**VI.    Attorney Tracey's March 23, 2009 Memorandum.**

Attorney Tracey[9] prepared a March 23, 2009 memorandum that described Rosalyn rejecting the will draft that left the farm to the Defendants outright and executing the 2009 will that left her estate to the children in equal shares. The district court admitted the memo over the Defendants' hearsay objection, finding it met a hearsay exception as a business record.[10] The Defendants argue the court erred in admitting the memo.

A business record that would otherwise be inadmissible hearsay is admissible if:

> (A) The record was made at or near the time by—or from information transmitted by—someone with knowledge;

---

[9] Tracey died in January 2017, before the trial in this case.

[10] The exception at issue, found in Iowa Rule of Evidence 5.803(6), is actually referenced as an exception for "[r]ecords of a regularly conducted activity," and, by its terms, would apply to more than just business records. However, the exception is commonly referred to as "the business record exception" and we will refer to it as such.

(B) The record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

(C) Making the record was a regular practice of that activity;

(D) All these conditions are shown by the testimony of the custodian or another qualified witness . . . ; and

(E) The opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Iowa R. Evid. 5.803(6); *see also GE Money Bank*, 773 N.W.2d at 538.

Janice Russ, Tracey's longtime secretary, provided foundation for the memo. According to her testimony, Tracey dictated the memo, Russ transcribed it, and they both signed it. Tracey typically prepared memoranda or notes for client files. Russ testified "the only thing that's not typical about that particular memorandum from other memorandums that Mr. Tracey might have done is that [Tracey] had [Russ] sign it and [Tracey] signed it." The district court found this evidence met the foundational requirements for the business-record exception and admitted the evidence. The Defendants claim this was error, arguing the foundational requirements for the business records exception were not met because preparation of the memo was not a regularly-conducted activity by attorney Tracey and the memo was prepared in anticipation of litigation.

The claimed error implicates Iowa Rule of Evidence 5.104(a), which provides "the court must decide any preliminary question about whether . . . evidence is admissible." *State v. Veverka*, 938 N.W.2d 197, 202 (Iowa 2020). In making that decision, the court is not bound by the rules of evidence. *Id.* Our review of the district court's ruling on the preliminary question of whether the facts met the foundational requirements for a hearsay exception is for the correction of legal error. *Id.* "When the preliminary question is one of fact, 'we give deference

to the district court's factual findings and uphold such findings if they are supported by substantial evidence.'" *Id.* (quoting *State v. Long*, 628 N.W.2d 440, 447 (Iowa 2001). Here, Russ's testimony constituted substantial evidence that the foundational requirements for the business-record exception were met. *See* Iowa R. Evid. 5.803(6). Her testimony also established that the memo—written more than eight years prior to the filing of the petition here—was not prepared in anticipation of litigation so as to exclude it from rule 5.803(6). *See Timberlake Constr. Co. v. U.S. Fid. & Guar. Co.*, 71 F.3d 335, 342 (10th Cir. 1995) ("[O]ne who prepares a document in anticipation of litigation is not acting in the regular course of business."). We find no error in admitting Tracey's March 23, 2009 memorandum pursuant to the business-record exception to the hearsay rule.

## VII. Attorney Fees.

The Plaintiffs were awarded attorney fees, which award the Defendants challenge on appeal. Our supreme court has found "attorney fees are proper consequential damages" in an intentional-interference-with-inheritance claim. *Huffey*, 491 N.W.2d at 522. The only basis for the attorney fee award was as damages regarding the Plaintiffs' intentional-interference-with-inheritance claim. Due to the fact we are setting aside the judgment on the intentional-interference-with-inheritance claim and remanding for a new trial on that claim, the attorney fee award is set aside as well, making it unnecessary to otherwise address the Defendants' challenges to the award.

## VIII. Conclusion.

There having been insufficient evidence submitted in support of the Plaintiffs' claim for intentional interference with inheritance based on the theory of

misuse of confidential information, the Defendants are entitled to a new trial on liability and damages on that claim. Therefore, the judgment in favor of the Plaintiffs on the claim of intentional interference with inheritance is hereby vacated and the case is remanded for a new trial on that claim. The judgment in favor of the Plaintiffs and against the Defendants on the will contest claim is affirmed.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED ON APPEAL; AFFIRMED ON CROSS-APPEAL.**